THE PEOPLE on the relation of THE WESTERN RAILROAD COR-PORATION, Appellants, *v.* THE BOARD OF ASSESSORS OF THE CITY OF ALBANY, Respondents.

A common law certiorari, to review the proceedings of assessors, brings up the merits, as well as questions of jurisdiction and regularity, and where they have neither exceeded their powers, nor been irregular in exercising them, the court will still examine and correct their decisions if erroneous.

Where the trustees of a sinking fund, raised and owned by a foreign cor-poration, are taxable inhabitants of this State, they are properly assessed as such trustees, to the full value of the fund, in the place of their resi-dence.

If, by the facts disclosed upon an application to the assessors by a person assessed, to " strike off his assessment from the roll," it appear, that the assessment should be reduced by any certain amount, although the appli-cant shows no sufficient reason for having his name stricken off, it is the duty of the assessors to make such reduction.

Where the assessors place their rejection of an application for the reduction of an assessment upon grounds independent of the *form* of the application, they cannot raise an objection to such form, upon certiorari to review their proceedings.

A fund created and owned by a corporation of another State, was held and controlled by trustees residing in, and taxable inhabitants of, this State. Upon being assessed, as such trustees, on account of this fund, by the assessors of the city of their residence, they presented to said assessors their

own affidavit setting forth that the fund was created by the foreign corporation, and held by themselves, to pay a debt owing by said foreign corporation; and that such fund did not exceed the debt in amount, more than $5,000. Upon this affidavit, they requested the assessors to strike the assessment (being $500,000) from the roll. The assessors made no objection to the form of the application ,but rejected it on the ground that the affidavit gave no good reason in law for striking the assessment from the roll.—*Held* (HUNT, Ch. J., MASON and LOTT, JJ., *contra*), that, the asssesors should have reduced the assessment to the sum of $5,000, the facts dis-closed in the affidavit rendering it their duty to do so.

(This cause was argued January 14th, 1869, and decided March 20th, 1869.)

THIS was a certiorari to review the proceedings of the board of assessors of the city of Albany, in assessing, for the year 1868, " Thomas W. Olcott, and Joseph C. Y. Paige, chamberlain of the city of Albany, trustees of the sinking fund of the Western Railroad Corporation," &c., under the head of " personal," the sum of $500,000.

It appeared, by the return made by the assessors, to the writ, that an application was made to them, in behalf of the trustees, ." to have that assessment struck from the roll," and that the only evidence, offered in that application, was the affidavit of Olcott, one of the trustees, as follows :

STATE OF NEW YORK,  
*City and County of Albany,* } *ss :*

Thomas W. Olcott, of the city of Albany, being sworn, says, that he, with the chamberlain of the city of Albany for the time being, are trustees of the sinking fund belonging to the Western Railroad Corporation, created by the legislature of the State of Massachusetts. That such fund is invested in the name of said railroad corporation, and the corporation of the city of Albany, and is held and managed by said trustees for the sole purpose of paying a debt, owing by said Western Railroad Corporation to the city of Albany, originally of one million of dollars.

That the amount of the fund at present on hand, is about $645,794.14, and the debt to be paid is $637,000, and interest,

so that the one sum is quite equal to the other, with a varia-tion not exceeding $5,000.

That the fund thus held, is not more than equal to the amount of the debt due to the city of Albany. That the Western Railroad Corporation, and the debtor of the city of Albany, is a corporation created by, and existing under the laws of the State of Massachusetts, and is not a resident or citizen of the State of New York.

And the deponent further says, that the value of the sink-ing fund invested, as aforesaid, is about equal to the debt owing by the Western Railroad Corporation to the city of Albany, which the said sinking fund was created to pay.

And this deponent further says, that during the year 1868, the assessors of the city of Albany assumed to assess this deponent, and the chamberlain of the city of Albany, for the purposes of State, municipal and county taxation, as the trustees of said fund, to the sum of $1,000,000. That one-half of this sum was assessed in 1867 (to wit, $500,000), and for the collection of the State, county and municipal tax on this amount, this deponent has been called upon by the marshal of the city of Albany, on the usual warrants, for pay-ment of the tax extended thereon, and payment was declined.

This deponent requests that the said assessment shall be stricken from the assessment roll.

THOMAS W. OLCOTT,

*Trustee, etc.*

Sworn before me this 23d September, 1868,

MARTIN D. CONWAY,

*Commissioner of Deeds, Albany, N. Y.*

The assessors state in their return, that, " on consideration, they decided that the said affidavit gave no good reason, in law, for striking said assessment off the roll, and said applica-tion was accordingly refused."

No other evidence of the state of the fund, its origin, object, or the amount of the debt, appears in the case.

The General Term of the Supreme Court of the Third

judicial district, upon the certiorari and return thereto, held the assessment legal and refused to interfere with it. The relators appealed to this court.

*John H. Reynolds*, for the appellants, upon the point, that upon a return to a writ of common law certiorari, the court may review the merits, cited *Swift* v. *The City of Poughkeepsie* (37 N. Y., 511); *People* v. *Van Alstyne* (32 Barb., 131); *Susquehanna Bank* v. *Supervisors of Broome County* (25 N. Y. R., 312); *Baldwin* v. *The City of Buffalo* (Id., 380); *Heywood* v. *City of Buffalo* (4 Kern., 534.) Upon the point, that the fund, in question, was not personal property "within this State," within the meaning of the assessment laws, he cited *Lord* v. *Arnold* (18 Barb., 105); *Hoyt* v. *Commissioners of Taxes* (23 N. Y., 224, 240); Story Confl. of Laws, 309 to 314; 2 Kent., 406; 23 N. Y. R., 240; Comstock, J.)

*Amasa J. Parker*, for the respondents, to the point, that a common law certiorari brings up for review only the question of *jurisdiction*, cited, *People* v. *Mayor of New York* (2 Hill, 9); *Haviland* v. *White* (7 How. Pr., 154); *Corlies* v. *Newbold* (7 Id., 166); *Ex parte Mayor of Albany* (23 Wend., 277); *Dillon* v. *Board of Police* (15 Abb., 167); *Morewood* v. *Hollister* (2 Seld., 312, and cases cited); *Allyn* v. *Commissioners of Schodack* (19 Wend., 342.)

Daniels, J.   It will be unnecessary to determine, whether § 6, of chapter 176, of the Laws of 1851, as amended by § 5 of chapter 536, of the Laws of 1851, repealed § 9 of the act relating to assessments in the city of Albany. (1 R. S., 5th ed., 912, § 21; Id., 979, § 9.) For the affidavit, presented to the respondent, in support of the application, made for the correction of the assessment, was accepted and received as the proper statutory proof required to be made in the case. If any objection to it, in that respect, had been intended, it was the duty of the respondent to make it, at the time when the affidavit

was presented, and when the relators could have obviated it by supplying, in its place, the evidence required by the statute, if, in truth, this was not of that description. Justice and fairness required as much as that, on the part of the respondent, and the obligation would, doubtless, have been carefully observed, if any such objection had been intended. But, it is evident from the action taken by the respondent, in the disposition of the application, that no such objection was intended to be made; for the affidavit was received and passed upon by it, and the application was finally rejected, not on the ground that the affidavit was either informal, or insufficient proof, but on the ground that it "gave no good reason in law for striking the assessment off the roll, and said application was accordingly refused." This is the statement which the respondent has made, in the return, for the purpose of exhibiting the reason that, in its judgment, justified the conclusion to which the board arrived. It was, in effect, that the facts disclosed by the affidavit, assuming them to have been accurately stated, were, legally, insufficient to entitle the relator to be relieved from the assessment. That, therefore, and that alone, is the point presented by the case for the consideration and decision of this court. And this point may be properly examined and decided under the pow ers exercised by courts upon writs of certiorari at common law, as the office and authority of such writs have been defined and settled by the direct adjudication of this court upon that subject. (*Mullins* v. *People*, 24 N. Y., 399, 404–5; *Smith* v. *City of Poughkeepsie*, 37 N. Y., 511, 515–16.)

The point thus stated arises upon the affidavit presented to, and acted upon by the respondent, on the application to vacate the assessment. The facts, upon which that was made, as they are contained in this affidavit, and on which this case is to be decided, were, that Thomas W. Olcott, and the chamberlain of the city of Albany, for the time being, were trustees of the sinking fund belonging to the Western Railroad Corporation created by the laws of Massachusetts; that such fund

was invested in the name of said railroad corporation, and the corporation of the city of Albany, and is held and managed by said trustees, for the sole purpose of paying a debt owing by said Western Railroad Corporation, to the city of Albany. By this statement, it clearly appears, that while the fund was invested in the names of the corporation creating it, and the corporation for whose benefit it was created; that it was held and managed by the trustees, who were taxable inhabitants of the city of Albany. And this was sufficient to bring the fund within the provision of the statute of this State, subjecting trustees to taxation, on account of the property, or fund, held by them, in trust. For, by the general statute, trustees are required to be assessed for the value of real estate and personal property, held by them, in that capacity. (1 R. S., 5th ed., 209, § 10.) And the special enactment concerning the city of Albany, is substantially to the same effect. For that provides, that the real and personal estate held by guardians, executors, administrators, and other trustees, shall be assessed against them, in their representative character. (1 R. S., 5th ed., 979, § 8.) In each of these enactments, the real and personal estate, held by the trustee, is required to be assessed. And the affidavit shows that the fund assessed in this instance, was held by two of the relators, in the capacity mentioned in these statutes. By the Revised Statutes, the terms, "personal estate," and "personal property," wherever they occur, in the chapter relating to the imposition and collection of taxes, are declared to include moneys, debts, and stocks. (1 R. S., 5th ed., 906, § 4.) And such have been their significance, ever since the statutes were revised, in 1830. (1 R. S., 388, § 3.) And no reason exists for supposing that these terms were made use of in any different sense, in chapter 86, of the Laws of 1850, providing for the assessment and collection of taxes in the city of Albany. By that act, all the personal property owned by a taxable inhabitant, except that invested in corporations or associations liable to taxation upon their capital, is required to be assessed for taxation. (Laws of 1850, 126, § 6, sub. 4.) And, that this sub-

division was intended to include personal property held by trustees, in trust, is made apparent, by the language used in section 9 of the same act, for that proceeds, at once, to prescribe the extent, and manner, in which the assessment upon it shall be made. It assumes this description of property to have been rendered liable to taxation, whenever it may be held in trust by an inhabitant of the city. And that could only be correctly done, by regarding it as having been included within the general terms, "personal property," contained in that subdivision. That this could be properly done, is apparent from the ordinary import of the terms themselves. For, where no restraint is either expressly or impliedly imposed upon them, and none is contained in this chapter, their ordinary and popular signification is as broad and comprehensive as that which the Revised Statutes have given to them, when relating to the general subject of taxation through the State.

This property was rendered liable to taxation, under each of these statutes, for it was shown by the affidavit, to be held by two of the relators in such a manner, as to bring it within the simple requirement made for that purpose by the legislature. And that was, merely, that it should be held by them in trust. When personal property is held in that manner, it is made liable to taxation. And the right to tax it, has not been rendered dependent either upon the residence of the person creating the trust, or that of the person to be benefited by the performance of it. A rule, similar to this, prevails in the State of Pennsylvania. (*Carlisle* v. *Marshall*, 36 Penn., 397.) The case was, therefore, brought within the express language of these two statutes, so far as the right to tax the fund was involved in controversy. Whether sufficient was shown by the affidavit, to render it the duty of the respondent, either to reject or reduce the assessment, on account of the debt the fund held in trust was created to pay, is a question still remaining to be considered.

The debt, which the fund was created to pay, was owing from the Western Railroad Company to the city of Albany. It originally amounted to the sum of $1,600,000. The fund

was held and managed by the trustees, for the sole purpose of paying that debt. When the application was made to the respondent, the debt had been reduced to the sum of $637,000, besides interest, and the fund to $645,794.14. What the interest upon the debt was, is not specifically mentioned. But it was generally stated, that the fund would not exceed the debt more than .the sum of $5,000. The other portions of the affidavit are too indefinite to be relied upon for the purpose of still further reducing the difference. For they do not show any such accumulation of interest, or any further charges upon the fund, which it may be legally required to satisfy, as could absorb the difference, shown by the precise amounts stated to exist between the debt and the fund. The fair import of the affidavit is, that the fund exceeded the debt by the sum of $5,000. The question, therefore, arises, whether the assessment should be reduced to this amount on account of the existence of the debt.

By the Revised Statutes, where a trustee, guardian, executor, or administrator shall be assessed for personal property held by him in such representative character, the just debts due from him in that relation are to be deducted from the amount of that property. (1 R. S., 5th ed., 909, § 10.) And by the special law already mentioned, relating to the city of Albany, the debts justly owing by the party or estate represented, or by the trustee, guardian, executor, or administrator himself, in his representative character, are required to be deducted from the value of the personal property assessed. (Id., 979, § 8.) The latter provision, it will be seen, has made use of terms more comprehensive than those contained in the previous general law existing upon the subject. For while the debts owing by the person assessed, in his representative capacity, are by both statutes required to be deducted, the latter also expressly requires such further debts to be deducted from the value of the personal property, as may be justly owing by the party, or estate represented. Possibly, both these statutes should receive the same construction, so far as they relate to this subject, notwithstanding the difference in.

the terms used by them. For it could hardly be supposed, that the legislature intended that the debts owing by the representative himself, should be deducted from the assessed value of the personal estate in his hands in that capacity, while those chargeable upon the estate itself, should not be deducted from it. The theory and spirit of the laws providing for the taxation of personal property is opposed to such a construction. In all other cases, where personal property is rendered taxable, it is to be assessed at its full value, after deducting the just debts owing by the owner. (1 R. S., 5th ed., 909, § 9, sub. 4; Id. 979, § 6, sub. 4.) The personal estate constitutes the well known primary fund for the payment of debts. And its real value is the sum that it is worth beyond the amount of such debts. No grounds exist for supposing that the legislature intended to discriminate, in this respect, between the property of living and dead persons, or between that of persons owning absolutely, or in another's right. The reason that would render it just, or proper, to deduct the debts owing, and legally chargeable, or collectable, out of the personalty in one case, is equally as strong, and as applicable for doing so in the others. And it can hardly, therefore, be supposed that it was intended, that any distinction should exist between them. But, it is not absolutely necessary that this should be definitively decided, upon the present occasion. For, it is not claimed that section 8 of the act relating to the assessment and collection of taxes in the city of Albany, has been either repealed or modified by any subsequent legislation. And it is, therefore, directly applicable to the case now before this court. By the express provision of that section, not only the debts owing by the trustees themselves, in their representative character, but, beyond that, the debts owing by the party, or estate represented, are to be deducted from the value of the personal property assessed. This language is very general and extended in its character. But, in consideration of the subject matter, to which it directly relates, it should be restrained, in a case like the present one, to such debts as are connected with, and payable out of, the property in which

the trust has been created. And, as so restricted, the statute very plainly includes this case. For, by the affidavit presented to the respondent, it clearly appears, that the debt due to the city of Albany, from the Western Railroad Company, was payable with, and chargeable upon, the fund assessed. It is, in substance, stated to be a sinking fund, created for the payment of the debt, held and managed by the trustees, for the sole purpose of paying it. It is, therefore, a debt, in the language of the statute, justly owing by the party represented by the trustees, and, as such, it should have been deducted from the otherwise assessable value of the fund, for it was made a direct charge upon that fund.

The assessment made by the respondent in this case should, therefore, be reduced to the sum of $5,000, which is the amount of the fund that will remain in the hands of the trustees, after they have paid the debt owing by the Western Railroad Company to the city of Albany. The facts entitling the relators to this reduction, were clearly stated in the affidavit delivered by them to the respondent, and, for that reason, that reduction should have been made, although the relators did not, technically, apply for such a correction of the assessment. Their neglect, in this respect, did not discharge the respondent from the duty imposed upon it, by law, of deducting the debt, from the fund held in trust, which was owed by the party represented by the trustees, and specifically made a charge upon that fund. The case presented required that this correction should have been made. But, as the relators omitted to ask for it, and applied for more than they were legally entitled to demand, the correction should now be made without costs. The application was general, that the assessment should be wholly stricken from the roll; that the relators were not entitled, under the circumstances, to demand. While this was not sufficient to render the entire assessment legal, or to preclude the relators from insisting upon their right to the relief the law secured to them, it should have the effect of depriving them of the costs which the law would otherwise have awarded to them.

WOODRUFF, GROVER, JAMES and MURRAY, JJ., concurred in the result of the opinion of DANIELS, J. WOODRUFF and JAMES, JJ., were, however, inclined to think the assessment, upon the facts as stated in the affidavit, should have been wholly stricken off.

MASON, J., read an opinion for affirmance. He thought that the assessors were right in rejecting the application to strike the assessment from the roll, and that having been the only application made to them, the court would not consider whether the assessment should have been reduced to a less amount or not.

HUNT, Ch. J., and LOTT, J., concurred with MASON, J. They also thought the facts disclosed, did not authorize any reduction of the assessment.

WOODRUFF and JAMES, JJ., were of opinion the act of 1850, in relation to assessments in the city of Albany, making the affidavit of the party conclusive upon the assessors, was not repealed or modified by the subsequent amendments to the Revised Statutes, giving the assessors power to examine and decide, &c. None of the other judges expressed an opinion upon this point.

Judgment ordered, directing the reduction of the assessment to $5,000, in accordance with DANIELS' opinion.