PEOPLE ex rel. CROOK et al. v. WELLS et al., Tax Com'rs.

(Supreme Court, Appellate Division, Second Department. April 22, 1904.)

1. TAXATION—ASSESSMENT—FORM.
    Where executors acquiesced in an order reducing an assessment against the estate, the assessment could not be considered void because designating the executor as "executor and trustee."

2. SAME—EXEMPTIONS—PROPERTY IN HANDS OF EXECUTOR.
    Tax Law, § 3 (Laws 1896, p. 797, c. 908), provides that all personal property situated or owned within the state is taxable, unless exempt by law; and section 8 (page 800) provides that every person shall be taxed in the district where he resides when the assessment is made, for all personal property owned by him or under his control, as agent, trustee, guardian, executor, or administrator. Code Civ. Proc. § 2721, provides that property of a decedent shall remain in the hands of the executor for one year from the time of granting letters testamentary. Held, that property bequeathed to a charitable corporation whose property is exempt from taxation is taxable while in the hands of the executor during the year he is required to hold it.

Appeal from Special Term, Kings County.

Certiorari by the people, on the relation of Abel Crook, as executor of the will of William A. Stuart, deceased, and another, against James L. Wells and others, as board of taxes and assessments of the city of New York. From an order denying a motion to quash the writ, defendants appeal. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

George S. Coleman (E. Crosby Kindleberger, on the brief), for appellants.

Samuel Crook, for respondents.

WOODWARD, J. William A. Stuart died September 30, 1902, leaving a last will and testament, in which he disposed of a personal estate appraised at $201,382.36. His will was admitted to probate in the county of Kings on the 9th day of February, 1903, letters testamentary being granted to Abel Crook on the same day, Mr. Crook previously, and on the 23d day of October, 1902, having been appointed temporary administrator. In 1903 the personal estate of the deceased in the hands of Mr. Crook was assessed in the sum of $200,000. Thereafter Mr. Crook as executor, and on behalf of the Brooklyn Masonic Guild, residuary legatee under the will of Mr. Stuart, made application to the board of taxes and assessments to have the assessment corrected, the theory being that under the will the entire residuary estate of Mr. Stuart vested in the Brooklyn Masonic Guild as of the date of Mr. Stuart's death, and that under the provisions of the tax law (Laws 1896, p. 797, c. 908, § 4; subd. 7) the personal property of the said

Brooklyn Masonic Guild, organized exclusively for charitable and benevolent purposes, was exempt from taxation; that when the legacy vested in that corporation it became the owner thereof, and only the beneficial enjoyment of the fund was postponed to a future date; that under those circumstances the holding of the entire property of the estate by Mr. Crook on the second Monday of January, in his representative character, did not render taxable that portion of the fund which the Brooklyn Masonic Guild was entitled to receive under the terms of Mr. Stuart's will, this sum aggregating, after the payment of the debts and specific legacies, $85,540.05. Upon this application the board of taxes and assessments made a reduction of $47,342.31 on account of certain stocks exempt from taxation, and fixed the assessment at $154,000. The relators obtained a writ of certiorari to review the assessment, and the respondents made a motion to quash or supersede the writ upon the ground that it appeared on the face of the petition that neither of the relators had been or would be aggrieved by the assessment complained of. The court at Special Term denied the motion, and by its order reduced the assessment to the sum of $68,500, holding that the "residuary estate and personal property belonging to the fraternal and charitable corporation, the Brooklyn Masonic Guild, is exempt from taxation." The relators do not appeal from the order fixing the amount of the assessment at $68,500, and by acquiescing in a part of the assessment they are hardly in a position to urge, in support of the order, that the assessment was void because of a technical irregularity in the designation of Mr. Crook as "executor and trustee," there being in fact no trust created. Every executor is a trustee. The will refers to the appointees of the testator as "executors and trustees," and we are of opinion that there is no merit in this objection to the form of the assessment, particularly as the relators do not urge this objection against a portion of the assessment as fixed by the court. The defendants appeal from the order, and present the question of law whether personal property held by an executor, which would be liable to assessment for taxation if bequeathed to an individual, is exempt from taxation if bequeathed to a benevolent or charitable corporation.

It might be questioned, in passing, whether the petition sets out facts sufficient to show that the Brooklyn Masonic Guild is entitled to the exemption claimed under any circumstances. Subdivision 7 of section 4 of the tax law (chapter 908, p. 797, Laws 1896) provides that:

"The real property of a corporation or association organized exclusively for the moral or mental improvement of men or women, or for religious, bible, tract, charitable, benevolent, missionary, hospital, infirmary, educational, scientific, literary, library, patriotic, historical or cemetery purposes, or for the enforcement of laws relating to children or animals, or for two or more of such purposes, and used exclusively for carrying out thereupon one or more of such purposes, and the personal property of any such corporation or association shall be exempt from taxation."

A copy of the act incorporating the Brooklyn Masonic Guild is made a part of the moving papers, and this act provides that—

"The said corporation is formed and hereby authorized to acquire, construct, maintain and manage a hall, temple, or other building within the borough of

Brooklyn, New York City, for the use of masonic bodies and other fraternal associations and benevolent organizations, and for social, benevolent and charitable purposes, and generally to promote and cherish the spirit of brotherhood among the members thereof."

And by the provisions of section 6 of this act the corporation is given the powers and made subject to the liabilities of the general corporations law, so far as the same are not inconsistent with the act. By section 11 of the general corporations law (chapter 687, p. 1804, Laws 1892), corporations are given very broad general powers, particularly in subdivision 5, and we find nothing in the act which limits the Brooklyn Masonic Guild exclusively to the purposes prescribed by the statute as a condition of exemption from taxation. That the Legislature intended to limit the scope of the exemption strictly, is evidenced by the further provision of subdivision 7 of section 4 of the Tax Law, that—

"No such corporation or association shall be entitled to any such exemption if any officer, member or employé thereof shall receive or may be lawfully entitled to receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes, or as proper beneficiaries of its strictly charitable purposes; or if the organization thereof, for any of such avowed purposes, be a guise or pretense for directly or indirectly making any other pecuniary profit for such corporation or association, or for any of its members or employés, or if it be not in good faith organized or conducted exclusively for one or more such purposes."

Under the charter this building to be erected by the Brooklyn Masonic Guild is not to be used exclusively for the purposes set forth in subdivision 7 of section 4 of the tax law, but it may be used "by masonic bodies and other fraternal associations," and "for social, benevolent and charitable purposes." It may, in the discretion of the board of directors, so far as the provisions of the statute regulate the matter, be used entirely for social purposes, for dances, receptions, etc.; it may be used by the Benevolent Order of Elks or the Catholic Mutual Benefit Association, or any one of the hundreds of such orders, for lodge purposes and social functions; while the law requires, as a condition of tax exemptions, that the corporation shall be "organized exclusively" for the purposes enumerated in the statute, and that it shall be "used exclusively for carrying out thereupon one or more of such purposes," and among these purposes there is no mention of fraternal associations or social functions of any kind. It is true that the petition alleges that "no officer, member or employé thereof receives or is entitled to receive any pecuniary profit from the operations thereof," but the statute requires that they shall not be "lawfully entitled to receive" any such profit, and it can hardly be said that under the provisions of the charter of the Brooklyn Masonic Guild such a profit might not be lawfully given to the association or its officers, members, or employés.

But assuming that the Brooklyn Masonic Guild, with a charter broad enough to permit it to give or rent its building to an athletic association, is entitled to exemptions upon its personal property, is there any justification for holding that it is entitled to such exemption upon a legacy which is still lawfully in the hands of the executor of the decedent's estate? Section 3 of the tax law provides that:

"All real property within this state, and all personal property situated or owned within this state, is taxable unless exempt from taxation by law." Laws 1896, p. 797, c. 908.

Personal property situated or owned within the state is subject to taxation, unless it can be shown that the particular property is exempt, and, by the provisions of section 8 (page 800) of the tax law:

"Every person shall be taxed in the tax district where he resides when the assessment for taxation is made, for all personal property owned by him, or under his control as agent, trustee, guardian, executor or administrator."

There is no question that Mr. Crook had lawfully in his possession, at the time of making the assessment in question, $154,000 worth of personal property which was subject to taxation in this state; it was property on which the decedent would have been liable to pay taxes had he been living, and, the law retaining this property in the hands of the executor for a period of one year from the time of granting letters testamentary (section 2721, Code Civ. Proc.), no reason suggests itself why the statute requiring an assessment on "all personal property owned by him, or under his control as agent, trustee, guardian, executor or administrator," should not be given effect. It is true, as suggested in some of the adjudicated cases, that the provision of the Code of Civil Procedure that no legacy shall be paid by an executor until after the expiration of one year is a mere rule of convenience, and does not determine the time of vesting of a legacy; but it is equally true that the state has a perfect right to determine the terms upon which property may be transferred, and it has an undoubted right to determine at what time the state will relinquish its right to tax any kind of property.

Personal property owned by the individual, and not specially exempt, is subject to taxation. When that individual dies, and leaves property to be distributed under a will, the state provides that it shall remain in the possession of the executor or administrator for a period of one year, and it requires that such property under the control of an executor or administrator shall be subject to taxation, the same as though the testator had remained alive. When the period of administration is at an end, when the property has been lawfully transferred to those who have been designated as beneficiaries under the will, it becomes subject to the law governing such property. If it goes into the hands of a corporation which is entitled to exemptions, it becomes exempt; if into the hands of an individual or corporation not entitled to exemptions, then it must continue to share in the public burdens; but during the time that the law holds the fund in the custody of the executor or administrator it is entitled to no exemptions. The title to the property may vest at the time of the testator's death. It undoubtedly does, but, so long as it is lawfully in the control of the executor or administrator, it is subject to the provisions of sections 8 and 32 of the tax law, and must continue to bear the burdens to which it was subject as the property of the testator. This is the clear and unambiguous language of the law, which should not be strained in construction for the purpose of relieving beneficiaries of that measure of burden which all property, in the absence of special considerations of a public nature,

should properly bear. The testator not having directed that the fund be paid over in a shorter time than that prescribed by section 2721 of the Code of Civil Procedure, while the rights of the beneficiary became fixed as of the time of the testator's death, that right was only to have the property delivered at the end of one year, and in the meantime the statute provided that it should continue as taxable property in the hands of the executor. This is eminently fair and just; it is a legitimate condition imposed by the state upon property in the course of administration, and beneficiaries ought to be the last persons to object to the payment of an equal portion of the public burdens. We think nothing in the statutes as they appear to-day take this case out of the rule laid down in the case of People v. Assessors of Albany, 40 N. Y. 154.

The order appealed from should be reversed, and the motion to quash the writ of certiorari should be granted.

Order reversed, with $10 costs and disbursements, and motion to quash writ of certiorari granted, with $10 costs. All concur; Hirschberg. P. J., in result.