We are of the opinion that under all the evidence in this case the plaintiff's bill should be dismissed and the injunction dissolved.

*Error assigned* was decree dismissing the bill.

*John G. Johnson,* with him *Edwin E. Tait, Edgar W. Tait* and *Sheridan Gorton,* for appellants.—A railroad, under the narrow gauge class of the act of 1875, cannot broaden its narrow gauge crossing across another railroad to a standard gauge crossing: Western N. Y. & Penna. Ry. Co. v. Ry. Co., 193 Pa. 127.

*Fred D. Gallup,* with him *Thomas H. Murray* and *Claude W. Shattuck,* for appellee.

PER CURIAM, July 6, 1911:

The decree dissolving the preliminary injunction and dismissing the bill is affirmed with costs, for the reasons stated in the opinion of Judge ORMEROD, specially presiding.

---

# Commonwealth *v.* Buffalo & Lake Erie Traction Company, Appellant.

*Taxation—Corporations—Tax on loans.*

A corporation formed by the merger of a Pennsylvania corporation and a New York corporation, which has its principal office in New York must deduct from the interest on its bonds the four mills tax and pay the same to the treasurer of the state of Pennsylvania, where it appears that the bonds in question are owned by residents of Pennsylvania, but are pledged and physically held in New York as collateral security for debts due by the Pennsylvania owners of the bonds.

Argued May 22, 1911. Appeal, No. 14, May T., 1911, by defendant, from judgment of C. P. Dauphin Co., Commonwealth Docket, 1908, No. 305, on case tried by the

court without a jury in suit of Commonwealth v. Buffalo & Lake Erie Traction Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Appeal from tax settlement.

From the record it appeared that the Buffalo & Lake Erie Traction Company is a corporation formed by the merger of a New York corporation and a Pennsylvania corporation, with its principal office in the state of New York. In its report for the year 1907, the company stated that $215,000 of its bonds were held during all the year 1907 in New York as collateral security for loans made by persons or corporations of the state of New York to individual residents of Pennsylvania. The coupons were paid for the year 1907, at the company's office in Buffalo, New York.

KUNKEL, P. J., filed the following opinion:

This is an appeal by the defendant from the settlement of an account against it for tax on its loans for the year 1907. Agreeably to the provisions of the Act of April 22, 1874, P. L. 109, it has been submitted to us for trial without a jury. The facts are not in controversy, having been agreed upon by the parties in a written statement, which has been filed in the case.

### DISCUSSION.

Part of the tax claimed in this settlement is charged upon $215,000 of bonds issued by the defendant company to and owned by residents of this state, but delivered by them to and held during the year 1907 by corporations and individuals of the state of New York as collateral security for money borrowed by the former from the latter residents. It is contended by the defendant that these bonds are not taxable in this state under the Act of June 8, 1891, P. L. 229, which imposes a tax of four mills upon the nominal value of all bonds "owned, held or possessed" by residents of the state, and that it is not therefore liable

for the tax under sec. 4 of the Act of June 30, 1885, P. L. 193, for having failed to deduct it as directed by that act when it paid the interest on the bonds. The single question presented, as stated in the defendant's written brief, is: "Are the bonds held in New York as collateral owned, held or possessed by any person resident, located or liable to taxation within this commonwealth?" The defendant claims that as the bonds were transferred and delivered as collateral security to residents of the state of New York, and there held during the year for which the tax is here charged, they were not owned by residents of this state. We are referred to numerous authorities in which are discussed the relative rights of the parties to a pledge or to the transfer of personal property for the purpose of collateral security and also to the definition of lexicographers of the word "owner." The authorities cited, however, can give us but little aid in determining the meaning of the word "owned" in the present instance. The question here is: How is it to be interpreted in the statute? So far as we are advised, as so used it has received no judicial interpretation. It is a familiar doctrine that statutes are presumed to use words in their popular sense, and that as between two meanings of a word the ordinary or popular meaning is to be preferred. If the word "owned" be interpreted in the sense in which it is commonly understood and used or even in its technical sense, can there be any doubt as to the ownership of the bonds in question? It is difficult to speak of the relation of the residents of this state to the bonds except as that of owners. It is true that the persons to whom they were pledged had a special property in them, as all bailees of property have in the articles held under the contract of bailment. But such special property neither in the legal nor in the ordinary acceptation of the term constituted them the owners. No one would think of speaking of the bailee of a horse for hire as the owner of the horse or of the pawnee of a watch as security for a loan as the owner of the watch or of any other bailee of property as the owner thereof. The

bailee has only such dominion over the property bailed as is necessary to secure his rights and to accomplish the purpose of the bailment; and the delivery of property to another by the owner for a time and for specific purpose does not make the owner any the less the owner on that account in the ordinary use and understanding of the word. To hold that the residents of New York were the owners of the bonds in the present case would be just as contrary to the commonly understood meaning of the word as to hold that the mortgagee of real estate is the owner of the real estate mortgaged, or that the lessee of real estate is the owner of the real estate leased, and yet in each of these cases the title to the real estate is in the mortgagee and lessee to the extent of effectuating the intention of the parties. There can be no question but that the bonds upon which the tax is here charged, although delivered to non-residents for a temporary purpose, were still owned by residents of the state within the meaning of the act of 1891. In Stanford v. San Francisco, 131 Cal. 34 (63 Pac. Repr. 145), where the question of the taxation of certain certificates of stocks and of certain bonds of foreign corporations pledged in New York for money borrowed by a decedent who was a resident of California was considered, it was held that such certificates of stocks and such bonds were taxable in the state of the decedent to him while living, and after his death to his estate, under the code which provided that the assessor must assess taxable property to the person by whom it was owned or claimed. In that case it was said that the shares of stocks and bonds pledged as collaterals to secure advances made thereon were assessable in the name of the pledgor, and that under that provision of the code the decedent was the owner of the shares and bonds by him pledged.

The fact that the bonds were physically out of the state cannot affect the question of their taxability. The owners were domiciled in this state and the bonds had their situs here also: Cooley on Taxation (3d ed.), 86, 87 and notes.

Nor do we think, as suggested by the defendant, that the New York holders of these bonds would be taxable on them under the laws of that state. No doubt they would be taxable on the loan made by them to the Pennsylvania owners of the bonds, but the bonds were held to secure and represented that indebtedness. To tax the bonds also would be to tax the same debt twice. This certainly could not be within the contemplation of the revenue laws of New York.

We therefore conclude:

1. That the bonds in question were owned by residents of the state of Pennsylvania within the meaning of that term, as it is used in the Act of June 8, 1891, P. L. 229.

2. That the bonds were taxable in the state of Pennsylvania.

3. That the commonwealth is entitled to judgment.

Wherefore, in accordance with the stipulation filed by the parties, judgment is directed to be entered in favor of the commonwealth and against the defendant for $855.02, unless exceptions be filed within the time limited by law.

*Error assigned* was the judgment of the court.

*W. S. Snyder,* with him *M. E. Olmsted* and *A. C. Stamm,* for appellant.—The bonds were not taxable as they were physically out of the state and the interest was paid out of the state: New York, Lake Erie & W. R. R. Co. v. Com. 153 U. S. 628 (14 Sup. Ct. Repr. 952); Del. & Hudson Canal Co. v. Com., 156 U. S. 200 (15 Sup. Ct. Repr. 358).

The Pennsylvania residents were not "owners" within the meaning of the act: Wilson v. Little, 2 N. Y. 443 (51 Am. Dec. 307); Brewster v. Hartley, 37 Cal. 15 (99 Am. Dec. 237); Anderson v. Waco State Bank, 92 Texas, 506 (71 Am. St. R. 867); Chambersburg Ins. Co. v. Smith, 11 Pa. 120; McNeil v. National Bank, 46 N. Y. 325; Muirhead v. Kirkpatrick, 21 Pa. 237; West Chester School Dist. v. Darlington, 38 Pa. 157; Phila. Ins., Trust, etc.,

Co.'s App., 17 W. N. C. 446; Price v. Hunter, 21 W. N. C. 306; Com. v. Lehigh Valley R. R. Co., 129 Pa. 429; State Tax on Foreign-Held Bonds, 82 U. S. 300.

*William M. Hargest,* assistant deputy attorney general, with him *John C. Bell,* attorney general, for appellee— The bonds were owned by residents of Pennsylvania: Buck v. Beach, 206 U. S. 392 (27 Sup. Ct. Repr. 712); Dempsey v. Harm, 20 W. N. C. 266; Munn v. McDonald, 10 Watts 270; Wilson v. Little, 2 N. Y. 443 (51 Am. Dec. 307); Com. v. Fall Brook Coal Co., 156 Pa. 488.

PER CURIAM, July 6, 1911:

The judgment is affirmed on the opinion of Judge KUN-KEL.

---

## Commonwealth *v.* Excelsior Brick and Stone Company, Appellant.

*Taxation—Exemption—Manufacturing corporations—Stopping business.*

A manufacturing corporation which has been compelled to stop business by reason of the condemnation of most of its lands by a municipality, is thereafter not exempt from taxation, and its stock may be taxed on a fair valuation of its assets, consisting of its claim against the city for damages, and its remaining real estate.

Argued May 22, 1911. Appeal, No. 12, May T., 1911, by defendant, from judgment of C. P. Dauphin Co., Commonwealth Docket, 1909, No. 94, on case tried by the court without a jury in suit of Commonwealth v. Excelsior Brick and Stone Company. Before FELL, C. J., BROWN, MESTREZAT, ELKIN, STEWART and MOSCH-ZISKER, JJ. Affirmed.

Appeal from tax settlement.

KUNKEL, P. J., filed the following opinion:

This is an appeal by the defendant from a settlement of an account against it for tax on its capital stock for