## Escheat of Deposits Outside State

BARD, Attorney General, September 21, 1938.—You have asked to be advised whether the Act of June 25, 1937, P. L. 2063, 27 PS §434 et seq., which requires corporations to make reports of various types of unclaimed

funds to the Department of Revenue, and which provides a procedure for the payment of such funds into the State Treasury, is applicable to funds of the type enumerated in the statute if they are kept on deposit in other States by Pennsylvania corporations. This act applies to dividends, debts, interest on debts, customers' deposits, proceeds, dividends or surrender values of insurance policies, and stock, which have been unclaimed for six or more successive years.

The problem which you have presented raises an unusual question of conflict of laws, and a search of the digests has failed to reveal any case in which this exact issue has been raised or determined. It becomes necessary, therefore, to approach the matter through a consideration of the fundamental theory which underlies such statutes, and through an analysis of the available decisions involving somewhat analogous situations.

It should be noted at the outset that it is impossible to consider the filing of reports with the Department of Revenue and the actual payment of funds into the State Treasury as entirely dissociated problems. In other words, we do not feel that the corporations in question could be compelled to report the unclaimed funds held by them on deposit in other States unless the Commonwealth has jurisdiction to compel the payment of such funds into the State Treasury.

In this connection we refer to the case of Germantown Trust Co. et al. v. Powell, 260 Pa. 181 (1918). This case involved the Act of June 7, 1915, P. L. 878, which provided a comprehensive method for requiring reports to be made to the Auditor General by persons or corporations having money on deposit or property in their possession for a long period of time belonging to other persons, and which prescribed the circumstances under which such property might be escheated and the proceedings therefor. When the Auditor General demanded from plaintiffs the reports required by this act, they filed bills in equity praying that it be declared unconstitutional. The

lower court in effect ruled that plaintiffs were obliged to file reports with the Auditor General even though the act might ultimately be declared invalid.

The Supreme Court reversed the ruling of the lower court, making the following comment on page 184:

"Of course, in the exercise of its right of visitation, for purposes of taxation and regulation, or to facilitate the accomplishment of any other proper end, the State has power to compel corporations to render it reports; but it cannot do this for the avowed purpose of enabling one of its officials to do something which the Constitution forbids or, even to accomplish a proper end, in a manner prohibited by the organic law."

Accordingly, we feel that the corporations here involved can only be compelled to report under the Act of 1937, supra, those funds which the Commonwealth of Pennsylvania has jurisdiction to require to be paid into the State Treasury.

Considering now the jurisdiction of the Commonwealth of Pennsylvania to require the payment into the State Treasury of unclaimed funds on deposit in other States, it is well established, as was held by the Supreme Court in the case of Commonwealth v. Dollar Savings Bank, 259 Pa. 138, 145 (1917), "that every sovereign state has jurisdiction to take charge of apparently abandoned or unclaimed property." This right to take possession of or escheat unclaimed personal property is not a question of succession, but an incident of sovereignty. Such right, as it exists in this country, is descended from the ancient prerogative of the King of England to seize all unclaimed goods, long known as "bona vacantia."

Accordingly, it would seem that unclaimed tangible personalty should only be seized by the jurisdiction within which it is located. Intangible personal property should be subject to similar requirements, and in the present case it remains to be determined whether or not the intangible personalty involved has its situs within the Commonwealth of Pennsylvania.

In considering this question, it is appropriate to refer to certain decisions involving jurisdiction for the purposes of taxation, for the right to impose taxes is an attribute of sovereignty just as is the right to take possession of unclaimed personalty. It is well established that intangible personal property, the ownership of which is in a domestic corporation, has a situs for the purpose of taxation in the State of incorporation. Thus, in the case of First Bank Stock Corp. v. Minnesota, 301 U. S. 234, 237 (1937), Mr. Justice Stone, in delivering the opinion of the court, made the following comment:

"Appellant is to be regarded as legally domiciled in Delaware, the place of its organization, and as taxable there upon its intangibles, see *Cream of Wheat Co.* v. *Grand Forks*, 253 U. S. 325, 328; *Johnson Oil Refining Co.* v. *Oklahoma*, 290 U. S. 158, 161; *Virginia* v. *Imperial Coal Sales Co.*, 293 U. S. 15, 19, at least in the absence of activities identifying them with some other place as their 'business situs.' "

In accordance with this principle, unclaimed funds of Pennsylvania corporations, although kept on deposit in other States, may be deemed to have their situs here and to be subject to the provisions of the Act of 1937. There is nothing to indicate that such funds have acquired a business situs in any other jurisdiction, and their very nature indicates that they are nothing more than inactive deposits maintained for the sole purpose of covering possible claims.

An analogous principle was relied upon in the case of Guthrie v. Pittsburgh, Cincinnati & St. Louis Ry., 158 Pa. 433 (1893). This case involved the estate of a resident of the District of Columbia who appointed, by will, a citizen and resident of Pennsylvania as trustee of his estate. The trustee kept the securities of the estate on deposit with a trust company in the City of Washington, D. C. It was held that certain bonds which were among the securities of the estate were subject to taxation by the State of Pennsylvania. In the course of the opinion

of the court below, which was affirmed, the following comment appears (p. 438) :

" 'It was held, however, in the case of Foreign-Held Bonds, 15 Wallace, 300, that when such bonds as these now under consideration are held by nonresidents of the state, it is beyond the power of the state to tax them, and it is maintained that the situs of this trust is Washington, D. C., and therefore that these are in law "foreign-held bonds."

" 'It certainly seems well settled that the situs of such property for the purpose of taxation is in that state where the trustee in whom is vested the legal title and ownership is domiciled: West Chester School Dist. v. Darlington, 38 Pa. 157; Carlisle v. Marshall, 36 Pa. 397; Price v. Hunter, 21 W. N. 306, U. S. C. C., East. Dist. of Pa. (These are cases under the act of 1846, but, so far as the present case is concerned, the acts are practically identical.) See also: People v. Assessors of Albany, 40 N. Y. 154; Dorr v. Boston, 6 Gray, 131. "Property held in trust should be assessed to the trustee where he resides. . . . The trustees are the representatives of the fund and it should be assessed at their residences": Desty on Taxation, page 337.' "

These comments are particularly pertinent in the present situation, for the underlying theory upon which the Act of 1937 is based is that unclaimed funds of the type described therein are trust funds which were held for the benefit of persons whose whereabouts have become unknown.

Similarly, in the case of Commonwealth v. Buffalo & Lake Erie Traction Co., 233 Pa. 79 (1911), there was involved the taxability of bonds owned by residents of the Commonwealth of Pennsylvania but delivered by them to and held by corporations and individuals of the State of New York as collateral security for money borrowed by the former from the latter residents. In this case the opinion of the lower court was affirmed and in that opinion the following comment appears (p. 82) :

"The fact that the bonds were physically out of the state cannot affect the question of their taxability. The owners were domiciled in this state and the bonds had their situs here also: Cooley on Taxation (3d ed.), 86, 87 and notes."

The principles established in the foregoing cases are applicable to bank deposits as well as to other types of intangible personal property, and it is an accepted principle of law that such deposits, if they have not acquired a business situs elsewhere, have a situs for the purposes of taxation at the domicile of their owner: Fidelity & Columbia Trust Co., etc., v. City of Louisville, 245 U. S. 54, 62 L. Ed. 145 (1917); Baldwin et al. v. Missouri, 281 U. S. 586 (1930).

It is our opinion that the theory upon which intangible personal property is given a situs at the domicile of the owner for the purposes of taxation should be equally applicable to situations involving unclaimed intangible personal property. No cases have been found in which the precise question here involved was raised, but in two closely analogous situations it has been ruled that jurisdiction to take possession of unclaimed intangible personalty is vested in the State of the owner's domicile.

In the case of In re Lyons' Estate, 175 Wash. 115, 26 P. (2d) 615 (1933), a resident of Alaska died intestate and without heirs and having on deposit in a bank in the State of Washington a sum of approximately $6200. The petition of the State of Washington for the escheat to it of this sum was denied and the State thereupon took an appeal. The Supreme Court of Washington ruled that the money was not escheatable to the State of Washington. In this opinion the following statement appears (p. 122):

"The debt owing by the Seattle bank was a credit belonging to the decedent Lyons before and at the time of his death; and, applying the rule *mobilia sequuntur personam*, the situs of this property was at the domicile of its owner, and therefore it was not property within

this state at the time of his death and not subject to escheat under our statute."

Similarly, in 32 Opinions of the Attorney General of the United States 268, it was ruled that United States registered bonds escheat to the State of domicile of the deceased registered payee.

In this connection the recent decision of the Supreme Court of Pennsylvania in the case of In re Escheat of Moneys in Custody of United States Treasury, 322 Pa. 481 (1936), is illuminating. This case involved funds that had been found due and payable to certain described bondholders in equity proceedings in the District Court of the United States for the Eastern District of Pennsylvania. Some of the bondholders who were found to be entitled to the funds in question failed to claim payment and the court thereupon directed that such unclaimed funds should be paid into its registry. After the lapse of five years these unclaimed moneys were deposited to the credit of the Treasury of the United States.

Under the Act of Congress any person entitled to such funds could procure them by obtaining a court order directing their payment to him. The Commonwealth of Pennsylvania, claiming that these funds escheated to it, filed a petition in the district court for an order directing payment as an escheat to the Commonwealth. This petition was dismissed for want of jurisdiction and without prejudice. The Commonwealth then instituted proceedings in the Court of Common Pleas of Philadelphia County averring that a decree of escheat was necessary to qualify its escheator in order that the claim of the Commonwealth could be properly presented.

It was claimed, inter alia, by the attorney for the United States that the funds sought to be escheated were in the Treasury of the United States and not within the jurisdiction of the courts of Pennsylvania. The Commonwealth's petition was dismissed by the Court of Common Pleas of Philadelphia County and an appeal

was taken. The Supreme Court reversed the decision of the lower court, making the following comments:

"The property under discussion is a debt payable by a debtor who deposited the money for distribution pursuant to a decree in an equity proceeding pending in the district court. The money is still held under its control, pursuant to the Act of Congress, for the purpose for which it was paid. 'That the debt due the absentee by the School District, resulting from the establishment of her dower, was within the jurisdiction of the state authority, is clear': *Cunnius* v. *Reading Sch. Dist.*, 198 U. S. 458, 467. As the Commonwealth merely asks for a declaration of escheat and does not desire an order of payment directed to any federal agency there would seem to be no objection to considering the proceedings as in personam: cf. *Security Bank* v. *California*, 263 U. S. 282, 287. . . . It may be conceded that the State cannot take possession of property in the custody of the federal government, but that fact need not prevent the judicial determination by the State of the succession to unclaimed property within its borders."

The unclaimed funds placed on deposit in other States by Pennsylvania corporations are credits owing to such corporations and they may be deemed to have their situs within the Commonwealth of Pennsylvania insofar as the Act of 1937 is concerned. It is true that these unclaimed funds may be considered as trust funds, but as between the Pennsylvania corporation and the banks in which they are on deposit, the Pennsylvania corporation is the legal owner of such funds and has the right to control their disposition.

You are advised, therefore, that the Act of June 25, 1937, P. L. 2063, which requires corporations to report certain unclaimed funds to the Secretary of Revenue and which prescribes a procedure for the payment of such funds into the State Treasury, is applicable to Pennsylvania corporations having funds of the type named in the statute on deposit in other States.