## National Bank of Germantown and Trust Company Appeal.

Argued September 26, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*James F. McMullan,* with him *Shields, Clark, Brown & McCown,* for appellants.

*Abraham Wernick,* Assistant City Solicitor, with him *Ernest Lowengrund,* Assistant City Solicitor and *Frank F. Truscott,* City Solicitor, for appellee.

OPINION BY RHODES, J., March 2, 1945:

This is an appeal by the executors of the last will and testament of Jane E. Gillen, deceased, from a decree entered by the court below dismissing exceptions to an assessment for personal property tax made by the Board of Revision of Taxes of Philadelphia County. The property was held taxable under the Act of June 17, 1913, P. L. 507, §1, as amended by the Act of April 21, 1933, P. L. 54, §1, 72 PS §4821, which provides for the imposition of a tax on "All personal property of the classes hereinafter enumerated, owned, held, or possessed by any person, persons, copartnership, or unincorporated association or company, resident, located, or liable to taxation within this Commonwealth ...... whether such personal property be owned, held, or possessed ...... in his, her, their, or its own right, or as active trustee, agent, attorney-in-fact, or in any

other capacity, for the use, benefit, or advantage of any other person ......" Among the classes of property thus taxable were mortgages.

The question involved is whether the decedent, Jane E. Gillen, owned a mortgage on certain premises in Passaic, N. J., during the years 1934-1939, which was subject to taxation by the County of Philadelphia under the Act of 1913, prior to its amendment by the Act of June 19, 1939, P. L. 413, 72 PS §4821.

Jane E. Gillen, a resident of Philadelphia, died testate on January 19, 1939, and letters testamentary were issued to appellants. The decedent was a resident of Philadelphia during the time involved. On August 25, 1931, a certain bond and mortgage secured on real estate in Passaic, N. J., was assigned to decedent, and the assignment was recorded in the Register's Office of Passaic County. On the same date, decedent assigned this bond and mortgage to the Passaic National Bank and Trust Company, having its principal office and place of business in Passaic, N. J. This assignment was likewise recorded. In conjunction with the assignment, the parties executed an agency agreement which stipulated that the bank was to hold the bond and mortgage as agent for decedent, collect and receive payments of interest on account of the mortgage, collect and receive payments on account of the principal thereof, and forward the income as collected to decedent. The bank was to use its best efforts to see that the taxes levied against the mortgaged premises were paid when due, and that adequate fire insurance to protect the mortgage was at all times kept in force. In consideration for the services thus rendered, the bank was authorized to deduct and retain two per cent of the income collected. The agreement further provided that the agency created could be canceled at any time by either party upon three months' notice in writing to the other party. On February 1, 1934, the bank executed an assignment

wherein the bond and mortgage were reassigned by it to decedent, which assignment was delivered and recorded after decedent's death. This has no bearing upon the issue. The bank never made any return for the income of this mortgage either as owner or trustee, and never considered itself as owner of the mortgage. On August 6, 1934, decedent borrowed money from the bank on her promissory note, and pledged the bond and mortgage with the bank as collateral for the repayment of the loan. The loan was repaid on November 14, 1934. A second agency agreement was entered into between the parties in May, 1935, and was the same as the previous agreement with the exception of specifying the matter of collection and application of rents and providing for a change in compensation. The bond and mortgage were continuously held by the bank, and possession was retained from August, 1931, to January, 1939.

The Board of Revision of Taxes made an assessment of the mortgage against the estate of Jane E. Gillen for the years 1934-1939 on the ground that it was subject to the county personal property tax under the Act of June 17, 1913, P. L. 507, as amended, 72 PS §4821. Appellants appealed to the court below, which affirmed the ruling of the Board of Revision of Taxes, and exceptions to the adjudication were dismissed by the court in banc. Appellants, having appealed to this court, contend that legal title to the mortgage was in the bank from 1934 to 1939, and that therefore the action of the Board of Revision of Taxes in subjecting the mortgage to the county personal property tax cannot be sustained, and that the court below was in error in affirming the board.

The Act of June 17, 1913, P. L. 507, as amended by the Act of April 21, 1933, P. L. 54, 72 PS §4821, is applicable. It was not until the Act of June 19, 1939, P. L. 413, that equitable interests were specifically in-

cluded. That act provides for a tax on the equitable interest in any personal property, of the classes enumerated, owned, held, or possessed by any resident, where the legal title to such personal property is vested in a trustee, agent, or attorney-in-fact, domiciled in another state, and where such resident is entitled to receive all or any part of the income. Consequently, appellants argue that *Dixon's Case*, 138 Pa. Superior Ct. 385, 11 A. 2d 169, is controlling. In that case we held that prior to the enactment of the amendment of 1939 the equitable interest of a Pennsylvania resident in personal property, the legal title to which was in a nonresident trustee, was not subject to the county personal property tax. In the *Dixon* case there was a valid trust, the legal title to the securities was in the nonresident trustee, and Dixon had but an equitable interest therein for life, and was not the owner of the trust property. In the case at bar there was merely an agency revocable by either party. Under the circumstances, we are of the opinion that the legal, as well as the equitable, estate was in the decedent and not in the bank. The bond and mortgage were owned by decedent, a resident of Philadelphia; the bank was merely the custodian of her property, and exercised dominion for a specific purpose as her agent. *Com. v. Buffalo & Lake Erie Traction Co.*, 233 Pa. 79, 81, 81 A. 932; *Girard Trust Company, Trustee's Appeal*, 333 Pa. 129, 3 A. 2d 252. There is a fundamental difference between a trustee and an agent. "Trustees and agents are distinguishable chiefly in the character in which they act and in the persons for whom they act. The agent, on the one hand, has the distinguishing features of his representative capacity and his derivative authority, and his acts are designed to be those of his constituent. On the other hand, a trustee is established and may be defined generally as a person in whom an estate, interest, or power in or affecting property is vested for the benefit of another,

He is not an agent of the estate, nor is the latter his principal; rather, in his actions on behalf of the estate, he is himself the principal": 2 Am. Jur., Agency, §6.

If decedent had only an equitable interest in this personal property, her estate would not be liable for the tax assessed. But such an equitable interest, in the present case, could only arise from a trust relationship. See Restatement of the Law, Property, §6, subd. (3). To create a trust the language or conduct must be clear and unambiguous, and it cannot arise where possible inferences are consistent with other relationships. *Bair v. Snyder County State Bank et al.*, 314 Pa. 85, 89, 171 A. 274. Nowhere in the record is there any manifestation of intention by decedent to create a trust. Both agreements between decedent and the bank were drawn up as and intended to be agency agreements. The bank, during the entire period, considered itself as acting as agent for decedent, and carried the account between them on its books as such. It never made out any fiduciary income tax returns covering the income from this mortgage, and the agency relationship is further emphasized by the use of the bond and mortgage as collateral for a loan by the bank to decedent. It was as owner of the bond and mortgage that they were pledged with the bank as collateral by decedent. The mere transfer of the bond and mortgage to the bank as agent in no way qualified decedent's ownership of the personal property or placed it beyond reach of the taxing authorities.

Decree is affirmed, at appellants' costs.