Commonwealth *v.* Universal Trades, Appellant.

Argued November 20, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO and JONES, JJ.

*Manuel Kraus, Gerald Krekstein* and *Roy J. Keefer,* with them *Hull, Leiby & Metzger,* for appellant.

*Edward Friedman,* Deputy Attorney General, with him *Thomas D. McBride,* Attorney General, for appellee.

OPINION BY MR. JUSTICE BELL, March 17, 1958:

The question involved, although differently phrased by appellant and appellee, may be thus stated: May Pennsylvania impose a capital stock tax on a domestic corporation based in part upon intangible assets which are located outside of Pennsylvania and have acquired a commercial or business situs in Florida, without violating the Due Process Clause of the Constitution?

This is a test case. Judge RICHARDS, President Judge of the Orphans' Court of Dauphin County, sitting in the Court of Common Pleas of Dauphin County, in a very able opinion said, inter alia:

"The facts are not in dispute. Most of them are contained in a stipulation filed. They may be summarized as follows:

"The defendant is a Pennsylvania corporation with a registered office in Ambridge, Penna., and a principal office in Florida. Within its charter purposes, it has been engaged exclusively in construction work in the British West Indies and Puerto Rico for the United States Navy and United States Department of Engineers. All of its contracts have been negotiated and effected by its officers working out of the Florida office. The defendant exercises complete jurisdiction, control, supervision and management of its assets and business at its Florida office. All stockholders' and directors' meetings are held there. All books of account and records are maintained there. All investments are made, controlled and supervised there. All invoices for work done or services rendered are sent out from, and all receipts therefrom, are collected by the Florida office and deposited in Florida. All disbursements are made either by the Florida office or at the situs of the construction work outside the continental limits of the United States. All executive and administrative functions are performed by its officers at and from its Florida office. The defendant has never negotiated a contract in Pennsylvania; has never negotiated a contract with a resident of Pennsylvania; has never received funds for construction work from a resident of Pennsylvania; nor has the company ever performed a construction contract in Pennsylvania or in the United States. All tangible assets of the company, exclusive of office furniture, are located outside

the continental limits of the United States. The office furniture is located at its office in Florida. The tangible assets outside the continental limits of the United States consist of heavy machinery and equipment. The company keeps no inventory in Pennsylvania and employs no salesmen here or elsewhere. The defendant conducts its executive and administrative offices in Florida and performs all other necessary functions to carry on its business there, with the exception of the actual construction work which is done outside the continental limits of the United States. This work consists of painting, repairing and making various installations on ships belonging to the Government of the United States.

"During the year in question the company owned tangible property consisting of machinery, equipment, fixtures and work in progress having a net book value of $266,614.26. The company owned intangible assets having a net book value of $271,052.92 consisting of cash in bank of $98,527.36, accounts receivable of $156,054.17, advances to individuals of $11,238.39, and special deposits of $5,233.00.

"During the year here involved the defendant filed with the State of Florida a Corporation Intangible Tax Report upon which it paid said tax on cash on hand and in banks, and on accounts receivable.

"The Pennsylvania capital stock tax here involved was determined by applying a property allocation fraction of $271,052.92/$537,667.18 x $266,000.00=$134,090.00, taxable at five mills, or a tax of $670.45. The numerator is the value of the intangible assets heretofore mentioned, while the denominator is the value of the total assets. The $266,000 is the value of the capital stock."

The case of *Commonwealth v. Semet-Solvay Co.*, 262 Pa. 234, 105 A. 92, is on its facts analogous to and

in principle rules the instant case. In that case, Pennsylvania imposed a capital stock tax upon a domestic corporation which was engaged in business in Pennsylvania and in other states. The Court held that *deposits in other states in connection with business done therein and accounts and bills receivable from the operations in other states were taxable in Pennsylvania.* Judge KUNKEL, whose opinion was affirmed Per Curiam by this Court said, inter alia (pages 235-236) :

"Capital stock represented by tangible personal property located permanently outside of the State is not taxable here, but this is not so, touching intangible personal property. Whatever may be the law of the other states it is the law of this State that *the situs of such property for taxation is the domicile of the owner.* The fact that the bank deposits in the present instance were in the banks of the other states and were there used in connection with the defendant's business and operations, or that the accounts receivable were derived from services performed and goods sold and payable outside of this State did not change their situs for taxation. Whether taxable directly or through the capital stock, *their taxable situs was the domicile of the defendant regardless of their source or place of use;* Commonwealth v. Standard Oil Co., 101 Pa. 119; Commonwealth v. Buffalo & Lake Erie Traction Co., 233 Pa. 79; Commonwealth v. Curtis Pub. Co., 237 Pa. 333, and cases there cited. And this doctrine violates no provision of the Federal Constitution: Kirtland v. Hotchkiss, 100 U. S. 491; Fidelity & Columbia Trust Company v. Louisville, 245 U. S. 54."

This has always been the settled law of Pennsylvania. In *Commonwealth v. Penna. Coal Co.,* 197 Pa. 551, 47 A. 740, the Court held that intangibles—in that case a mortgage held by a Pennsylvania corporation secured on foreign real estate—have as their situs the

domicile of the owner, and are properly taxable in Pennsylvania.

In *Commonwealth v. Stewart*, 338 Pa. 9, 12 A. 444, affirmed in *Stewart v. Pennsylvania*, 312 U. S. 649, the Court sustained the taxation (under the Pennsylvania Personal Property Tax Act) of the equitable interest of a cestui que trust who resided in Pennsylvania in the out of state intangibles located in New York under a New York trust. This Court said (page 17) :

"It is urged by appellee that the trust funds have their situs in New York, are taxable there in the possession of the trustee,· and are beyond the jurisdictional taxing power of the State of Pennsylvania. This argument loses sight of principles of constitutional law which in our opinion are firmly established, namely, that the existence of different forms of ownership interests in intangible personal property may make such intangibles amenable to taxation by more than one sovereignty, and that 'double taxation', that is, taxation of such different ownerships in the same property, even though in part overlapping, is not in itself a violation of the due process clause of the Fourteenth Amendment. In the present instance the State of Pennsylvania is not levying a tax upon the same subject of taxation as the State of New York might do, but only upon the equitable interest of appellee in the intangibles of which the legal ownership is in the trustees. While the doctrine of mobilia sequuntur personam no longer applies to tangibles, these, like land, having their tax situs in the jurisdiction in which they are physically located (Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194; Frick v. Pennsylvania, 268 U. S. 473; Curry v. McCanless, 307 U. S. 357, 363, 364, 365), in the case of intangibles the ancient doctrine still remains, because of obvious differences, theoretical and practical, between them and tangible chattels;

Union Refrigerator Transit Co. v. Kentucky, supra, 205; Fidelity & Columbia Trust Co. v. Louisville, 245 U. S. 54, 58, 59; Frick v. Pennsylvania, supra, 494; Blodgett v. Silberman, 277 U. S. 1, 9, 10, 17; Farmers Loan & Trust, Co. v. Minnesota, 280 U. S. 204; Curry v. McCanless, supra, 365, 366, 367. By virtue of that doctrine the situs of the equitable interest of appellee in the trust intangibles is that of her domicile; her estate therein is property in Pennsylvania and therefore subject to the taxing jurisdiction of this state. The right of Pennsylvania to tax property which, in the view of the law, is within its jurisdiction, cannot be denied or impaired because another state also may have the right to tax one of its own residents who enjoys another kind of ownership in the funds constituting the trust res."

In *Commonwealth v. The Mundy Corporation*, 346 Pa. 482, 30 A. 2d 878, the Court said (page 484) : "The Act of 1935, P. L. 184, amending the Act of 1889, P. L. 420, does not give power to the Commonwealth to levy a capital stock tax or a franchise tax upon securities held and owned by a *foreign* corporation doing business in Pennsylvania, which have no fair relation to the value of the franchise enjoyed by the corporation in this state. Such assets must be excluded. See Commonwealth v. Columbia Gas and Electric Corporation, 336 Pa. 209, 8 A. 2d 404. These securities which the Commonwealth is attempting to tax are incorporeal intangibles and as such under the facts here present are not within the taxing jurisdiction of the state. The legal situs of this property for taxation purposes is the state of appellee's domicile, to wit, Delaware. A corporation's domicile is the state of its incorporation: Bank of Augusta v. Earle, 38 U. S. 519, 588, and that is the situs for taxation of its money in bank and

bonds or other securities, in safe keeping in that state: . . ."

Similarly, in *Commonwealth v. Buffalo & Lake Erie Traction Co.*, 233 Pa. 79, 81 A. 932, Judge KUNKEL, whose opinion was affirmed Per Curiam by this Court, said (page 82) : "The fact that the bonds were physically out of the State cannot affect the question of their taxability. The owners were domiciled in this State and the bonds had their situs here also . . ."

In *Sauer Appeal*, 167 Pa. Superior Ct. 33, 74 A. 2d 700, the Court said (page 36) : "Although having no direct bearing on the present question, under the principle of mobilia sequuntur personam, the situs of intangible personal property for tax purposes is the domicile of the owner. Com. v. Curtis Publishing Co., 237 Pa. 333, 85 A. 360; Com. v. Semet-Solvay Co., 262 Pa. 234, 236, 105 A. 92; Dorrance's Estate, 333 Pa. 162, 168, 3 A. 2d 682; Com. v. Stewart, 338 Pa. 9, 18, 12 A. 2d 444, affirmed 312 U. S. 649, 61 S. Ct. 445, 85 L. Ed. 1101."

Notwithstanding all the cases hereinabove cited and quoted, appellant contends that the fact that certain intangibles have acquired a commercial or business situs—which it equates to domicile—in Florida, and that a Florida (corporation intangible) tax has been paid thereon, (1) negates and nullifies the power of Pennsylvania (which it terms merely a paper domicile) to impose a capital stock tax based in part on such intangibles, and (2) that to permit Pennsylvania to impose a tax under such circumstances would amount to a denial of due process which is guaranteed by the Fourteenth Amendment to the Constitution of the United States. We shall assume, arguendo, what the Commonwealth vigorously denies, viz. that appellant has established a commercial and business situs for its intangible assets in Florida.

We agree that the capital stock tax is not a franchise tax but a property tax: *Murray v. Philadelphia*, 364 Pa. 157, 166, 71 A. 2d 280, 284; *National Biscuit Company v. Philadelphia*, 374 Pa. 604, 612, 98 A. 2d 182; *Commonwealth v. Standard Oil Co.*, 101 Pa. 119, 145; *Peoples Natural Gas Co. v. Pittsburgh*, 317 Pa. 1, 7, 175 A. 691; *Philadelphia v. Samuels*, 338 Pa. 321, 325, 12 A. 2d 79; *Lawrence Township School District Tax Case*, 362 Pa. 377, 381, 67 A. 2d 372; *Commonwealth v. Penna. Coal Co.*, 197 Pa., supra; *Commonwealth v. Mundy Corporation*, 346 Pa., supra. But that will not suffice to defeat the present tax. Pennsylvania gives this domestic corporation its existence, its very life. It defines its powers; it gives it the right to make contracts, to sue and be sued, to increase or decrease its capital; it requires it to maintain a registered office in Pennsylvania where it must keep, inter alia, an original or duplicate record of the proceedings of the shareholders and of the directors, and the original or a copy of its by-laws.* Pennsylvania statutory and decisional law define the nature and extent, and protect the interest of its shareholders. Why, under these facts, should Pennsylvania lose or abandon its right to impose an annual capital stock tax based in part upon the intangible property here involved!

Appellant concedes that the following taxes would not violate due process, even if a property tax is assessed by Florida upon appellant's intangible assets which have a commercial domicile or business situs in Florida: ". . . a property tax on an equitable interest in property held and enjoyed by appellant within the state, Com. v. Stewart, 338 Pa. 9, 17, 21, . . . affirmed 312 U. S. 649; . . . a tax on all of its shares as a condition to its existence, Corry v. City of Baltimore, 196

---

* Act of May 5, 1933, P. L. 364, Art. III, §308, 15 PS §2852-308.

U. S. 466, 477, . . . even though the shares may be taxed also by the state in which the owner resides, Hawley v. City of Malden, 232 U. S. 1, 11, 12 . . .; an excise tax on the receipt of income, if appellant were physically present within the state, even though earned in and taxed by, another state, Lawrence v. State Tax Commission, 286 U. S. 276, 281 [as well as] a franchise tax for the privilege 'to be' a corporation measured by its entire capital stock regardless of whether it was doing business outside of the state, Kansas City, Memphis & Birmingham R. R. Co. v. Stiles, 242 U. S. 111, 119 . . .; [and] a transfer inheritance tax on the transfer of its shares because Pennsylvania laws created the shares and protected the property rights therein and are essential to the transfer even though the state of the domicile of decedent could levy a transfer inheritance tax thereon, State Tax Commission of Utah v. Aldrich, 316 U. S. 174."

Notwithstanding all the aforesaid cases appellant contends that Pennsylvania is unjustly subjecting it to double taxation and is thereby violating due process.

Pertinent United States Supreme Court authorities reaffirm our conviction that the Capital Stock Tax was validly imposed upon the appellant: *Cream of Wheat Co. v. Grand Forks,* 253 U. S. 325; *Fidelity & Columbia Trust Co. v. Louisville,* 245 U. S. 54; *Newark Fire Insurance Co. v. State Board,* 307 U. S. 313; *Greenough v. Tax Assessors,* 331 U. S. 486; *State Tax Commission of Utah v. Aldrich,* 316 U. S. 174.

*Cream of Wheat Co. v. Grand Forks,* 253 U. S., supra, is particularly apposite and directly governs the instant appeal. In that case, the Cream of Wheat Company was incorporated under the laws of North Dakota, and it maintained a public office therein. However, its manufacturing commercial and financial business were conducted wholly outside the state, and the

corporation had neither tangible nor intangible property in North Dakota. All of its property was alleged to have been taxed by other states. Nevertheless, the United States Supreme Court sustained a North Dakota tax on the property, including stocks and bonds, of the domestic corporation which were located outside North Dakota, irrespective of whether the North Dakota tax was considered a franchise or a property tax. The Court stated, inter alia, that the Fourteenth Amendment did not prevent double taxation under these circumstances, and pertinently said (pages 328-329):

"The company was confessedly domiciled in North Dakota; for it was incorporated under the laws of that State. As said by Mr. Chief Justice TANEY, 'It must dwell in the place of its creation, and cannot migrate to another sovereignty.' Bank of Augusta v. Earle, 13 Pet. 519, 588. *The fact that its property and business were entirely in another State did not make it any the less subject to taxation in the State of its domicile.* The limitation imposed by the Fourteenth Amendment is merely that a State may not tax a resident for property which has acquired a permanent situs beyond its boundaries. This is the ground on which the ferry franchise involved in Louisville & Jeffersonville Ferry Co. v. Kentucky, 188 U. S. 385 (an incorporeal hereditament partaking of the nature of real property) and the tangible personal property permanently outside the State involved in Delaware, Lackawanna & Western R. R. Co. v. Pennsylvania, 198 U. S. 341, and Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, were held immune from taxation by the States in which the companies were incorporated. The limitation upon the power of taxation does not apply even to tangible personal property without the State of the corporation's domicile if, like a seagoing vessel, the property

has no permanent situs anywhere. Southern Pacific Co. v. Kentucky, 222 U. S. 63, 68. *Nor has it any application to intangible property,* Union Refrigerator Transit Co. v. Kentucky, supra, p. 205; Hawley v. Malden, 232 U. S. 1, 11, *even though the property is also taxable in another State by virtue of having acquired a 'business situs' there,* Fidelity & Columbia Trust Co. v. Louisville, 245 U. S. 54, 59. As stated in that case: 'It is unnecessary to consider whether the distinction between a tax measured by certain property and a tax on that property could be invoked in a case like this. Flint v. Stone Tracy Co., 220 U. S. 107, 146, 162 et seq. Whichever this tax technically may be, the authorities show that it must be sustained.' "

In *Fidelity & Columbia Trust Co. v. Louisville,* 245 U. S., supra, a person domiciled in Kentucky carried on a business in Missouri and made deposits in the latter state which were derived from the business carried on therein. The resulting credits were included by Kentucky authorities in assessing his personal property taxes in Kentucky. On these facts, the Court held that the tax, whether considered as a tax on property or a tax on the individual measured by his property, was within the power of the State of Kentucky, conceding, arguendo, that Missouri also had power to tax the deposits.

*Newark Fire Insurance Co. v. State Board,* 307 U. S., supra, is also pertinent to the instant appeal. In that case, a tax assessed under a New Jersey statute, upon an Insurance Company incorporated under the laws of New Jersey, upon the full amount of its capital stock paid in and accumulated surplus, less certain deductions for liabilities and statutory exemptions, was resisted by the corporation as being a violation of the Fourteenth Amendment on the ground that the business situs of its intangibles and the tax

domicile of the corporation were in New York. The Fire Insurance Company had a registered office which it maintained in Newark, N. J., together with such books as are required to be kept within that State. Except for some minor local business carried on in its Newark office, the corporation operated from its New York office. No executive officer was in New Jersey; reports were sent to the New York office; the general accounts of the corporation were kept in the New York office; the general accounting, underwriting and executive officers were located in New York; all cash and securities were located in New York or outside of New Jersey with the exception of $6,425.; all of the corporation's general affairs were conducted from the main office in New York and had been so conducted from the time the corporation had moved its main office from Newark six years previously. In sustaining the tax, two opinions were filed by the Court. The first was written by Justice REED in which three additional Justices concurred; the second opinion was written by Justice FRANKFURTER in which three additional Justices concurred. One Justice (MCREYNOLDS) dissented. In the opinion of Justice REED the following appears (page 318):

"When a state exercises its sovereign power to create a private corporation, that corporation becomes a citizen, and domiciled in the jurisdiction, of its creator. There it must dwell. The dominion of the state over its creature is complete. In accordance with the ordinary recognition of the rule of mobilia sequuntur personam to determine the taxable situs of intangible personalty, the presumption is that such property is taxable by the state of the corporation's origin."

Justice FRANKFURTER said (page 324): "Chapter 236 of the New Jersey Laws of 1918, as applied to the circumstances of these two cases, clearly does not of-

fend the Constitution. In substance, such legislation has heretofore been found free from constitutional infirmity. Cream of Wheat Co. v. Grand Forks, 253 U. S. 325, affirming 41 N. Dak. 330; 170 N.W. 863. During all the vicissitudes which the so-called 'jurisdiction-to-tax' doctrine has encountered since that case was decided, the extent of a state's taxing power over a corporation of its own creation, recognized in the Cream of Wheat case, has neither been restricted nor impaired."

In *Greenough v. Tax Assessors*, 331 U. S., supra, a Rhode Island municipality assessed a tax against a resident of Rhode Island for one-half of the value of intangibles held jointly by him and a resident of New York as trustees under the will of a resident of New York. The evidences of the intangible property were at all times in New York, and the life beneficiary of the trust resided there. The Rhode Island resident did not actually exercise his powers as trustee in Rhode Island. The appellant-trustee contended in that case that the Rhode Island tax statute if applicable to him was unconstitutional under the Due Process Clause of the Fourteenth Amendment, since (1) the tax would be imposed simply by virtue of the trustee's residence in Rhode Island, and (2) because it exacts payment measured by the value of property wholly beyond the reach of Rhode Island's power and to which Rhode Island gives no protection or benefit. In holding that the tax did not violate the Due Process Clause of the Fourteenth Amendment, the Court said (page 492):

". . . So long as a state chooses to tax the value of intangibles as a part of a taxpayer's wealth, the location of the evidences of ownership is immaterial. If the location of the documents was controlling, their transfer to another jurisdiction would defeat the tax of the domiciliary state. As a matter of fact, there is more

reason for the domiciliary state of the owner of the intangibles than for any other taxing jurisdiction to collect a property tax on the intangibles. Since the intangibles themselves have no real situs, the domicile of the owner is the nearest approximation, although other taxing jurisdictions may also have power to tax the same intangibles. Normally, the intangibles are subject to the immediate control of the owner. This close relationship between the intangibles and the owner furnishes an adequate basis for the tax on the owner by the state of his residence as against any attack for violation of the Fourteenth Amendment. The state of the owner's residence supplies the owner with the benefits and protection inherent in the existence of an organized government. He may choose to expand his activities beyond its borders but the state of his residence is his base of operations. It is the place where he exercises certain privileges of citizenship and enjoys the protection of his domiciliary government."

*State Commission of Utah v. Aldrich*, 316 U. S. 174, is applicable to and in principle rules the instant case adversely to appellant. That case is well summarized in the syllabus (page 174) :

"A State may, consistently with the Fourteenth Amendment, impose a tax upon a transfer by death of shares of stock in a corporation which is incorporated under its laws, even though the decedent of whose estate the shares were a part, was domiciled at the time of death in another State, where the certificates representing the shares were held; though the certificates were never within the State of incorporation; and though for many years the corporation had kept its stock books, records and transfer agents in the State where decedent was domiciled, and had maintained none of these in the State of incorporation."

The Court in its opinion said, inter alia (page 178) : ". . . We held that the power to tax intangibles was not restricted to one State, whether 'we regard the right of a state to tax as founded on power over the object taxed, as declared by Chief Justice MARSHALL in Mc-Culloch v. Maryland, supra, through dominion over tangibles or over persons whose relationships are the source of intangible rights; or on the benefit and protection conferred by the taxing sovereignty, or both.' Id. pp. 367-368. And we added : *'Shares of corporate stock may be taxed at the domicile of the shareholder and also at that of the corporation which the taxing state has created and controls;* . . . . Protection, benefit, and power over the subject matter are not confined to either state.' Id., p. 368. . . .

"More specifically, if the question is 'whether the state has given anything for which it can ask return' (Wisconsin v. J. C. Penney Co., supra, p. 444), or whether the transfer depends upon and involves the law of Utah for its exercise (Blackstone v. Miller), there can be no doubt that Utah is not restrained by the Fourteenth Amendment from taxing this transfer. The corporation owes its existence to Utah. Utah law defines the nature and extent of the interest of the shareholders in the corporation. Utah law affords protection for those rights. Utah has power over the transfer by the corporation of its shares of stock. Certainly that protection, benefit and power over the shares would have satisfied the test of Blackstone v. Miller and Curry v. McCanless. . . ." . . .

". . . In line with our recent decisions in Curry v. McCanless, Graves v. Elliott and Graves v. Schmidlapp, we repeat that *there is no constitutional rule of immunity from taxation of intangibles by more than one State.* In case of shares of stock, 'jurisdiction to tax' is not restricted to the domiciliary State. Another

State which has extended benefits or protection, or which can demonstrate 'the practical fact of its power' or sovereignty as respects the shares (Blackstone v. Miller, p. 205), may likewise constitutionally make its exaction. In other words, we restore these intangibles to the constitutional status which they occupied up to a few years ago. See Greves v. Shaw, 173 Mass. 205, 53 N.E. 372; Larson v. MacMiller, 56 Utah 84, 189 P. 579, and cases collected in 42 A.L.R. pp. 365 et seq."

Notwithstanding the able argument of counsel for the appellant, we see no reason or justification for overruling the prior decisions of this Court which expressly or in principle are sustained by the above mentioned decisions of the Supreme Court of the United States, and validate the present tax.

Judgment affirmed.

Mr. Justice COHEN took no part in the consideration or decision of this case.