## Commonwealth v. First Pennsylvania Banking & Trust Co.

*Frederick C. N. Littleton* and *Alfred J. McDowell*, for appellant.

*Ralph Snyder*, for Commonwealth.

SWOPE, P. J., March 22, 1961.—The facts surrounding the issue in this case have been agreed upon by the parties. Frank John Van der Kemp, a citizen of the United States, who resided throughout his lifetime in France, by deed of trust dated February 18, 1952, executed in France, transferred certain assets to the Pennsylvania Company for Banking and Trusts, now The First Pennsylvania Banking and Trust Company, as trustee, to pay the income to himself for life. Upon the death of the settlor, the income was to be paid to a citizen of France for her life, and, upon her death, the principal to be paid to the American National Red Cross. By the terms of the trust instrument, Frank

526

John Van der Kemp reserved the right to invade the corpus of the trust as well as the right to amend or revoke the trust at any time during his lifetime. The trust instrument reposed in the trustee broad discretionary powers to retain investments, to invest and reinvest without restriction as to so-called legal investments, to manage, lease, sell or mortgage real and personal property, and to expend such sums from principal in the interest of the income beneficiaries as it considered proper. The trust instrument further provided that the duties, powers and liabilities of the trustee could not be changed without its written consent.

Frank John Van der Kemp died a resident of Rouen, France, May 9, 1957. At the time of his death, the trust assets consisted of 1,171 units of the diversified common trust fund maintained by the trustee, plus a small amount of cash, having a total value of $52,709.15. The Pennsylvania Department of Revenue, by notice delivered to the trustee, asserted a nonresident transfer inheritance tax liability against these assets of $7,906.36, plus interest, from which assessment trustee now appeals.

Section 1, of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, 72 PS §2301, under the terms of which the instant assessment was made, provides, in part:

"A tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations in the following cases:

. . . "(c) When the transfer is . . . of goods, wares, and merchandise within this Commonwealth, . . . made by a non-resident, . . . intended to take effect in possession or enjoyment at or after . . . death."

There is no question that the settlor was at all times a nonresident of Pennsylvania. On the other hand, appellant concedes that the transfer in question was to take effect in possession or enjoyment at or after the death of settlor. The only remaining question to be decided is whether the assets are "goods, wares and merchandise within this Commonwealth."

The Commonwealth contends that both of these questions must be answered in the affirmative and that the assets of the trust remaining in the hands of the trustee upon the death of settlor are properly subject to the tax in question. We are constrained to agree with the Commonwealth's contentions.

In Johnson's Estate, 333 Pa. 193 (1939), in a situation similar to the instant case, the opinion of Justice Linn, in interpreting the identical portion of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as that with which we are presently concerned, said, at page 196:

"The title of the Act, . . . shows that the legislature used the words 'goods, wares, and merchandise' in a broad and not a narrow sense."

Again at pages 197-98, the court said:

"The legislature obviously intended to deal with all the property of a nonresident whose transfer could be made the subject of tax in this state. It dealt with real property, with goods, wares, and merchandise within this Commonwealth, with shares of stock of Pennsylvania corporations and of national banks engaged in business in the state. Obviously, therefore, the legislature intended, by using the words 'goods, wares, and merchandise', to include all of a nonresident's Pennsylvania property except real estate and shares of stock of the character described."

It remains to determine whether or not the trust assets in the hands of the Pennsylvania trustee had acquired such a situs within the Commonwealth that,

at the death of nonresident settlor, they were properly subject to the tax imposed by the statute.

While it is true that for general purposes the doctrine of "mobilia personam sequuntur" is still recognized by the courts of this Commonwealth (Commonwealth v. Stewart, 338 Pa. 9 (1940) ; Commonwealth v. Universal Trades, 392 Pa. 323 (1958)), it would seem that the application of the rule has evolved to the point where the terms of the agreement governing the treatment of the intangibles may be sufficiently indicative of situs as to subject them to the taxing jurisdiction of the State wherein they are located. As early as Lewis' Estate, 203 Pa. 211 (1902), the court, in a per curiam opinion, stated at pages 214-15:

"While it is true that the mere residence of an agent or registry of stock in his name as such does not seem to be material, yet securities separated from the person of the owner and actually with an agent for collection, investment and reinvestment have been regarded as within the state of the agent under ordinary annual tax laws. See State v. St. Louis County Courts, 47 Mo. 600, People v. Commrs. of Taxes, 23 N.Y. 240, Catlin v. Hull, 21 Vt. 152, People v. Smith, 88 N.Y. 576, and Pullman Car Co. v. Pennsylvania, 141 U.S. 18 (11 Sup. Ct. Rep. 876).

"In People v. Smith, supra, there is a judicial intimation which shows the growing tendency, at least in New York, to do away with the distinction between tangible and intangible, so far as the question of situs is concerned. 'It is clear', says the court in that case, 'that mortgages, bonds, bills and notes have for many purposes come to be regarded as property, not as mere evidence of debts, and that they may have a situs at the place they are found like other visible, tangible chattels.'

"If therefore being 'within the state' subjects property to the burden of collateral inheritance tax, the

consequence would seem to be that even intangibles, held as the property in the case at bar was for many years prior to the death of the testatrix in the hands of agents in Pennsylvania with authority to invest and reinvest, would be within the law."

We note that Lewis' Estate, supra, in at least three subsequent opinions of the Supreme Court was limited to its own facts and not recognized as sufficient authority to sustain the imposition of tax: See Shoenberger's Estate, 221 Pa. 112 (1908); Easby's Estate, 285 Pa. 60 (1926), and Countess de Noailles' Estate, 236 Pa. 213 (1912). However, in all three instances, the facts are readily distinguishable from those in the instant case. Shoenberger's Estate involved the effect of conversion of real property situate in Pennsylvania under the terms of the will of a nonresident decedent. In Easby's Estate, the court distinguished Lewis' Estate as follows, at page 64:

". . . One barrier to the successful advancement of the Commonwealth's position is that there was no request by the heirs to make distribution here; such distribution was made by the court solely upon the suggestion submitted by the ancillary administrators in their petition for distribution and not upon the request of the distributees, in which respect this case differs from the Lewis's Est., 203 Pa. 211, where it was determined that when a person domiciled in another state dies leaving stocks, bonds and mortgages which had always been held by an agent in this State for investment and reinvestment, and the executor, legatees and creditors agree that there shall be a complete administration and distribution of the whole estate by the orphans' court of the county in which the securities are held and where the agent resides, the Commonwealth is entitled to the collateral inheritance tax on the estate."

Countess de Noailles' Estate, upon which appellant

relies heavily, although it involved a trust consisting of securities, bonds and mortgages held by a Pennsylvania trustee for a nonresident, as in the instant case, and although the trust, also as in the instant case, was revocable at the election of settlor, is markedly different from the case at hand with regard to the extent of the trustee's duties and powers. In de Noailles' the trust was merely passive, remained at all times subject to the absolute control of settlor, and, upon her death, the entire fund passed directly to the ancillary administrators of her estate rather than to any beneficiaries named in the deed. In the trust herein involved, broad discretionary powers in the administration of the trust res, including the right to invest and reinvest, were given to the Pennsylvania trustee. The trust deed provided that the right of amendment reserved to settlor would not be available to change the duties, powers and liabilities of the trustee without its written consent. The deed itself provided for succession of the income benefits upon the death of the settlor and further provided for final disposition of the trust assets upon the death of the succeeding income beneficiary. Thus, the instant arrangement, with the exception of the power to revoke, clearly established such extensive dominion over the administration and disposition of the fund in the Pennsylvania trustee to render it entirely dissimilar to the de Noailles' case.

In the one clear point of similarity with de Noailles', the reservation by settlor of the right of revocation of the trust, we are of the opinion that, even though this factor standing alone might militate in favor of appellant's contention for nonsitus in this Commonwealth, no single circumstance may properly be so weighted as to control the determination of situs without regard for all other factors surrounding the trust, including the administration and distribution of the fund. In Hostetter's Estate, 267 Pa. 193 (1920), in

discussing the practical limitations of the application of the doctrine that movables follow the person, the court said at pages 196-97:

"The general rule that movables follow the person if applied to the facts in this case would defeat the claims of the Commonwealth and subject the property to the control and taxing power of the particular jurisdiction in which the owner happened to reside. That rule, however, is not of universal application. Based on a fiction of law it has special use where convenience and justice require, but ordinarily the truth and not the fiction must form the basis of action: Small's Est., 151 Pa. 1, 14; Blackstone v. Miller, 188 U.S. 189. In applying the rule to cases arising under the collateral inheritance tax act where property is held in this State for the benefit of nonresidents, it has been made to depend mainly upon the nature of the property and the right of the beneficiary to remove or enjoy or dispose of it, as he may see fit; in other words, upon the extent of the control the beneficiary has over the estate. In deciding the question it becomes necessary to take into consideration the circumstances of each case as it arises."

Johnson's Estate, 333 Pa. 193 (1939), relied upon by the Commonwealth, with the exception of the fact that the trust therein was irrevocable, which factor alone we do not agree is controlling of the issue of situs, presents a fact situation so similar to the instant case as to be controlling of our decision herein. In that case, property consisting of a bond and mortgage on Pennsylvania real estate held by a resident trustee for a nonresident owner under a trust deed providing for payment of income for life to settlor, thence to be distributed to his three daughters, was held subject to Pennsylvania inheritance tax upon the death of settlor. The court, in so holding, said at pages 195-96:

"The seat of the trust was therefore in Delaware County, Pennsylvania, a conclusion required by the circumstances, particularly by the facts that the settlor selected the trustee whose principal place of business was there, that the obligation and the property securing its payment were there and that resort to the local law was required to perfect the assignment of the mortgage, and, if necessary, its foreclosure. See Dorrance's Estate, 333 Pa. 162; Griscom's Estate, 333 Pa. 186; Beale, Conflict of Laws, Vol. 1, sections 118C. 40, 118C. 41; Restatement, Conflict of Laws, sections 297, 299; Greenough v. Osgood, 235 Mass. 235, 126 N.E. 461; Swetland v. Swetland, 105 N.J. Eq. 608, 149 A. 50."

We note that paragraph eighth of the trust deed in question sets forth:

"Eighth: Situs Clause: Questions pertaining to the validity, construction and administration of the Trust shall be determined in accordance with the law of Pennsylvania."

In this paragraph, we see additionally an agreement or acquiescence on the part of settlor that situs of the fund be established in this Commonwealth. Taken together, the provisions of the deed endowing the trustee with broad discretionary powers in the administration of the fund, and the specific directions for final distribution amply support the Commonwealth's contention that, upon the death of settlor, the situs of these intangibles for tax purposes is in Pennsylvania.

Appellant points out that the government of France has made claim for French death taxes and announces its resistance to the payment of death taxes to two governmental authorities. It is well established, however, that two separate taxing authorities may properly assert jurisdiction over the same property. In Commonwealth v. Universal Trades, 392 Pa. 323 (1957), the court, citing Commonwealth v. Stewart,

supra, affirmed in Stewart v. Penna., 312 U. S. 649, said at page 329:

"The right of Pennsylvania to tax property, which in the view of the law, is within its jurisdiction, cannot be denied or impaired because another state also may have the right to tax one of its own residents who enjoys another kind of ownership in the funds constituting the trust res."

See also Curry v. McCanless, 307 U. S. 357, and Graves v. Elliott, 307 U. S. 383.

Finally, appellant suggests that, in any event, only the life estate of the second life tenant is subject to tax, the portion going to the charitable remainderman being exempt from tax under the decision of Tracy Estate, Orphans' Court of Dauphin County, no. 601 of 1947, opinion filed August 9, 1960.

It would appear, however, that we need not be presently concerned with the portion which will go to the charitable remainderman, since no tax would be payable thereon in any event until the expiration of the second life estate. Where, as in the instant case, there has been no election to prepay the tax on the remainder interest, article I, sec. 3 of the Act of June 20, 1919, P. L. sec. 521, as amended, provides:

"Where there is a transfer of property by a devise, descent, bequest, gift, or grant, liable to the tax hereinbefore imposed, which devise, descent, bequest, gift, or grant is to take effect in possession or to come into actual enjoyment after the expiration of any one or more life-estates or a period of years, the tax on such estate shall not be payable, nor shall interest begin to run thereon, until the person liable for the same shall come into actual possession of such estate by the termination of the estates for life or years."

In light of the above provision in the statute, it would appear further that the imposition of tax at the present time must be limited to the value of the second

534

life income beneficiary's interest rather than upon the value of the entire trust assets remaining in the hands of the trustee.

Accordingly, we find that so much of the assets held by the First Pennsylvania Banking and Trust Company, as trustee under deed of trust of Frank John Van der Kemp, dated February 18, 1952, as represents the value of the life estate passing under the terms of the trust to Mrs. Odette Marie Charlotte Hyde, is presently subject to the imposition of Pennsylvania transfer inheritance tax, with interest and at the rate prescribed by the taxing statute. The Commonwealth is ordered to recompute the amount of tax, together with interest, in a manner consistent herewith.