# Wettach, Appellant, *v.* Horn.

*Will—Conclusiveness of probate—Ejectment—Acts of April* 22, 1856, *P. L.* 533, *and June* 25, 1895, *P. L.* 305.

Where an action of ejectment is brought more than three years after the probate of a will, no question which the register of wills had jurisdiction to pass upon when he entered the decree of probate, can be inquired into in the trial of the ejectment.

*Will—Devise—Lapsing of devise—Illegitimates—Acts of April* 8, 1833, *P. L.* 250, *May* 6, 1844, *P. L.* 565, *and July* 12, 1897, *P. L.* 256.

Where a testator by a will probated prior to the passage of the Act of July 12, 1897, P. L. 256, devises land to an illegitimate and her heirs, and the devisee who was a natural child of a sister of the testator dies before the testator, the devise lapses; but if the other provisions of the will and the circumstances surrounding its execution show that the testator used the words " her heirs " in the sense of " children," the children of the devisee will be entitled to the land.

Argued Oct. 22, 1901. Appeal, No. 86, Oct. T., 1901, by plaintiffs, from judgment of C. P. Washington Co., Nov. T., 1900, No. 93, non obstante veredicto in case of Everillah Wettach et al. v. Laura A. Horn et al. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Ejectment for a tract of land in West Bethlehem township. McIlvain, P. J., filed the following opinion:

James Taylor, on June 20, 1836, was found to be a lunatic without lucid intervals. He died leaving a will, which was duly probated before the register of wills of this county on February 1, 1896. In that will he devised to Margaret Ann Nichols the residuum of his estate, which included the tract of land in dispute. The devise is in these words: " And all the rest and residue of my estate I bequeath to Margaret Ann, natural daughter of my deceased sister Jane, intermarried with Jesse Nichols and her heirs." No appeal was ever taken from the judgment of probate entered by the register of wills. Margaret Ann Nichols, the illegitimate child of Jane Taylor, died before James Taylor, leaving children as her heirs at law, who are the defendants in this case.

QUESTIONS OF LAW RESERVED:

1. Is the probate of the will of James Taylor conclusive against the plaintiffs in this case, who are his collateral heirs at law?

2. Margaret Ann Nichols, being a bastard, and having died during the lifetime of James Taylor, did the devise to her and her heirs lapse?

First question.

#### (*a*) COMMON-LAW RULE.

At common law there was no such thing as a probate of a will of real estate. Such will was liable to be disputed whenever and as often as it was set up in any judicial proceeding as evidence of title.

#### (*b*) STATUTORY RULE.

The early acts of assembly of 1705 and 1832, gave to the register of wills jurisdiction " of the probate of wills and testaments, of the granting of letters testamentary and of administration."

Under these acts our courts held that the probate of the register in cases where the title of real estate was involved, was only prima facie evidence, and that of the weakest kind. Even a will found to be valid on a trial of an issue devisavit vel non could be attacked in a common-law action of ejectment: Holliday v. Ward, 19 Pa. 485; Smith v. Bonsall, 5 Rawle, 80; Rowland v. Evans, 6 Pa. 435; Shields's Appeal, 20 Pa. 291; Asay v. Hoover, 5 Pa. 31.

After the dates of the decision in these cases and as a result, perhaps, of a suggestion made by Mr. Justice BELL in the opinion filed in Asay v. Hoover, supra, the act of April 22, 1856, was passed, and in its 7th section it is provided that " the probate by the register of the proper county of any will devising real estate shall be conclusive as to such realty unless within five (made three, by the act of 1895, P. L. 305) years from the date of such probate those interested to controvert it shall by caveat and action at law duly pursued, contest the validity of such will as to such realty."

This act, it has been held, establishes " a rule of property," and under the decisions, as found in a number of cases, no

question which the register had jurisdiction to pass upon when he entered his decree of probate of the will of James Taylor could be inquired into in the trial of this case: Warfield v. Fox, 53 Pa. 382; Folmar's Appeal, 68 Pa. 482; Wilson v. Gaston, 92 Pa. 207; McCort's Appeal, 98 Pa. 33; Cochran v. Young, 104 Pa. 333.

We are therefore of the opinion that the testimony touching the validity of the will of James Taylor was improperly admitted, and that judgment should be entered in favor of the defendant non obstante veredicto if the defendants take anything under this will.

Second question.

### (a) COMMON-LAW RULE.

If the legatee predeceases the testator, the legacy lapses, notwithstanding the will contains the words heirs, executors, administrators, etc., as these words are prima facie to be regarded only as words of limitation, calculated to describe the nature of the estate given to the legatee or devisee, and not as used with any express purpose of the preventing a lapse in the bequest where the legatee should happen to die before the testator: Redfield on the Law of Wills (2d ed.), p. 485, sec. 50, part II.

It must appear clearly that the testator intended a devise to go to the "heirs" of the first taker as purchasers and that they personally take direct from him to prevent the devise from lapsing in case of the death of the first taker in his lifetime: Redfield on Wills, supra, p. 488, part II. To the same effect are our cases of Sword v. Adams, 3 Yeates, 34, Campbell v. Jamison, 8 Pa. 498, Dickinson v. Purvis, 8 S. & R. 71; Comfort v. Mather, 2 W. & S. 451, and Barnett's Appeal, 104 Pa. 348.

In the light of these authorities it is evident that the bequest "all the rest and residue of my estate I bequeath to Margaret Ann, natural daughter of my deceased sister Jane, intermarried with Jesse Nichols and her heirs" lapsed at the death of Margaret Ann Nichols, the testator, James Taylor, at that time being still alive, unless it is saved to her heirs by some statutory enactment, or something in the will and in the circumstances of the case upon which the court can seize to avoid the

operation of the common-law rule that the words " and her heirs " are words of limitation.

The only acts of assembly that have for their purpose to avoid the lapsing of legacies, to which our attention has been called, are the Act of April 8, 1833, P. L. 250, the Act of May 6, 1844, P. L. 565, and the Act of July 12, 1897, P. L. 256.

The act of 1833 provides that where a person named in a will as legatee is a child or lineal descendant of the testator, the legacy shall not lapse by reason of the death of the legatee in the lifetime of the testator if he or she leave issue surviving the testator. Margaret Ann Nichols was not a child or lineal descendant of James Taylor, and this act is not applicable to the case in hand. The act of 1897 was passed after James Taylor's will was probated and does not affect distribution under wills which became operative before its passage. The act of 1844 provides that " no devise or legacy hereafter made in favor of a brother or sister or the children of a deceased brother or sister of any testator, such testator not leaving any lineal descendant, shall be deemed or held to lapse or become void by reason of the decease of such devisee or legatee in the lifetime of the testator; but such devise or legacy shall be good and available in favor of such surviving issue with like effect as if such devisee or legatee had survived the testator."

James Taylor left no lineal descendants; Margaret Ann Nichols, the legatee, was a natural child of a sister of James Taylor, the testator, and under this act the bequest to Margaret Ann Nichols would not lapse, if the word " children " in the act includes natural or illegitimate children. In our opinion it does not. A bastard is the child of no one. The word " child," in its legal sense, carries with it the idea of the married relation. And unless the contrary intent is made to appear an act of assembly defining or enlarging the rights of children in the estate left by their parents applies only to children born in lawful wedlock.

" A gift to children means legitimate children only unless it appears that illegitimate children must have been intended: " Appel v. Byers, 98 Pa. 481.

" When legally construed the term children is confined to legitimate children : " 1 Bouvier's Dictionary, 320.

A child is " a descendant in the first degree of either sex born

in lawful wedlock of human parents:" 3 Am. & Ency. of Law (1st ed.), p. 230.

"Bastards are not included in the word children in statutes of descent and distribution:" Porter Heirs v. Porter, 40 Am. Dec. 55.

There being, then, no statutory enactment that would relieve the defendants against the general rule as to lapsed legacies, we come next to the question whether or not the will of James Taylor on its face and in the light of all the circumstances surrounding its execution, shows that he did not use the words "and her heirs" as words of limitation, but as words of purchase.

In the second paragraph of the will the testator directs his "executors hereinafter named to make sale of all lands and personal property of which I may die seized or possessed as soon after my decease as may be found convenient." Then after providing for the building of a fence around the graveyard on the farm of Thomas Howden, where his father and mother were buried, and keeping the same in repair, he proceeds to divide as personalty the proceeds of the sale of his land and personal property, and the children of his brother and sisters were evidently in his mind. The first bequest is " to my brother Thomas's heirs at law I bequeath one hundred dollars." He named no one, but he describes a class of persons by the use of the words "heirs at law" under the facts of the case evidently children. The second bequest is "to the heirs at law of my sister Elizabeth I bequeath one hundred dollars." Again no one named, but the words "heirs at law" used as a word of description or purchase. Then after giving his executor Barnard C. Jackman $200, he provides that "all the rest and residue of my estate I bequeath to Margaret Ann, natural daughter of my deceased sister Jane intermarried with Jesse Nichols and her heirs." Giving to the words "her heirs" the same meaning that the testator gave them in the previous bequests, we have a bequest to Margaret Ann Nichols and her children, the words "her heirs" being words of purchase and not words of limitation. Margaret Ann Nichols being a bastard and her mother being dead, her children and her heirs were interchangeable terms under the act of 1855.

The testator evidently intended to limit his bequests to the

plaintiffs, who are the heirs at law of his brother Thomas and sister Elizabeth, to $200, and to give the rest of his estate to Margaret Ann Nichols and her children, with whom he lived; and in our opinion this intent is so apparent that, to carry it out, we construe the words "and her heirs" to be words of purchase.

*Error assigned* among others was in entering judgment non obstante veredicto.

*T. S. Riley* and *Albert S. Sprowls*, for appellant.

*John C. Bane*, with him *Norman E. Clark*, for appellees.

PER CURIAM, January 6, 1902:

The plaintiffs in this suit brought an action of ejectment to recover a tract of land situate in West Bethlehem township, Washington county, Pa., containing 106 acres. Their contention was that the land they sought to recover possession of was their property which they alleged the defendants had no just claim or title to. A jury was called and qualified on January 23, 1901, which on January 25, 1901, rendered a verdict in favor of the plaintiffs for the land described in the writ, subject, however, to the questions of law reserved. The questions reserved were argued before Judges MCILVAINE and TAYLOR who on May 10, 1901, entered a judgment in favor of the defendants on the questions of law reserved non obstante veredicto. The conclusion of the court was that the plaintiffs had no right or title to the land they sought to recover possession of, and that the testator evidently intended to limit his bequests to the plaintiffs who were the heirs at law of his brother Thomas and sister Elizabeth to $200, and then after giving his executor, Bernard C. Jackman, $200, he provides that "all the rest and residue of my estate I bequeath to Margaret Ann, natural daughter of my deceased sister Jane, intermarried with Jesse Nichols and her heirs." Giving to the words "her heirs" the same meaning that the testator gave them in the previous bequests, we have a bequest to Margaret Ann Nichols and her children, the words "her heirs" being words of purchase and not words of limitation.

We need not add anything to what has been so well said by

the learned judge of the court below in his concise and instructive opinion. We therefore affirm the judgment entered in favor of the defendants on the questions of law reserved non obstante veredicto.