Smrekar et al. *v.* Jones & Laughlin Steel Corp., Appellant.

184

Argued April 19, 1939.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT,
JJ.

*William A. Challener, Jr.,* with him *Frank McC.
Painter* and *William A. Challener,* for appellant.

*S. V. Albo,* with him *Murray J. Jordan* and *Fred J.
Jordan,* for appellee.

OPINION BY CUNNINGHAM, J., September 29, 1939:

By this appeal and the following one at No. 79
April Term, 1939, by the same appellant from a judg-
ment of the Common Pleas of Beaver County, we are
required to decide whether, under Section 307 of our
Workmen's Compensation Act of June 2, 1915, P. L.
736, as further amended by the Act of April 26, 1929,
P. L. 829, 77 PS §§561-2, the compensation for which
Jones & Laughlin Steel Corp. is admittedly liable, by
reason of the death of Victor DeFelice from an acci-

dent suffered in the course of his employment with it, is payable to his illegitimate infant daughter, Marline Patricia Smrekar, or to his parents, Panfilo and Angeline DeFelice.

Victor DeFelice, twenty-three years of age and unmarried, while performing his duties as a brakeman on the narrow gauge railroad at the North Mills Plant of the appellant steel company at Aliquippa, Beaver County, was accidentally killed on September 15, 1936.

His parents filed their claim-petition for compensation on September 29, 1936, and the mother of decedent's illegitimate daughter, born September 3, 1935, filed a conflicting petition, on behalf of the child, on October 26, 1936.

The position of counsel for the steel company was, and still is, that under the uncontroverted circumstances of Victor DeFelice's death it is liable for the payment of compensation either to his parents or his illegitimate daughter, but not to both.

At a hearing before a referee in December, 1936, the claims were heard together and in January, 1937, the referee dismissed the claim of the parents and made an award to the daughter. The parents and the employer appealed to the board from that award. In November, 1937, the board in an opinion by Chairman Ullman, reversed the action of the referee upon the ground that the decedent's illegitimate daughter "was not a member of his household at the time of his death" and "therefore is not entitled to compensation." It then made a finding that decedent's parents were partially dependent upon him at the time of his death and awarded compensation to them upon that basis.

From this decision by the board the guardian of the estate of the daughter appealed to the Common Pleas of Allegheny County, in which county she was born and resided. See Section 427, 77 PS §872.

That tribunal, in an opinion by ELLENBOGEN, J., dated May 28, 1938, reversed the board, set aside the award

to the parents and entered judgment on the award made by the referee to the daughter. The present appeal is by the steel company from that judgment.

In the meantime, the steel company, as a precaution against awards both to the parents and the daughter, appealed from the award to the parents by the board to the Common Pleas of Beaver County, in which the parents reside and the accident occurred. That court, in an opinion by READER, P. J., under date of June 28, 1938, affirmed the award by the board to the parents and entered judgment thereon. The appeal to No. 79 April Term, 1939, is by the steel company from that judgment and will be disposed of in a separate opinion.

We, therefore, now turn to the consideration of the appeal at the above entitled number and term from the judgment of the Common Pleas of Allegheny County. It will be reversed.

Reading the testimony in the light most favorable to the claim of the daughter and giving her the benefit of every reasonable inference therefrom, we have this factual situation.

Decedent during his entire lifetime lived at home with his parents in Aliquippa. Other children living in the same house were a married son who paid $30 per month for board; an unmarried son, thirty-one, who paid $12 per month; one daughter in ill health; and another in high school. The father, by reason of illness, has not worked for a long time. It was the custom of the decedent to turn over his pay envelope, as received, to his mother, who used the contents for the purchase of food and clothing and more recently to make certain involuntary payments imposed upon the decedent as hereinafter related. It was conceded by counsel for the steel company (66a) that, as respects the claim of the parents, this "is clearly a case of partial dependency."

On December 4, 1935, the decedent pleaded guilty to an indictment returned at the October Sessions of

the Court of Quarter Sessions of Allegheny County charging him with being the father of an illegitimate female child born September 3, 1935, to Mary Smrekar. On the same day he was sentenced to pay a fine and costs; $110 to Rosalie Foundling Asylum and $25 to the mother for "lying in expenses" and maintenance of child to date; and $3 per week until the child attained the age of fourteen years. This sentence was complied with practically up to the time of his death.

There was competent evidence that the mother of the child, in the language of the ninth finding of the referee, made an effort to have it "taken into decedent's household but was refused permission by decedent's parents for the reason that the household was too crowded."

The following testimony of Mary Smrekar definitely negatives any suggestion that her child was ever a "member of decedent's household": "Q. Miss Smrekar, after your child was born where was it kept and maintained? A. At the St. Rosalia's Hospital until about six months old. Q. Then where was it taken? A. I had people in Aliquippa take care of it for me. Q. Are they taking care of it now? A. No, I am taking care of it at home. Q. You live with this child? A. Well, I work and my mother takes care of it until I come home. ...... Q. How long have you been working? A. I have been working for the year since I have been home from the hospital, I have been with the baby since it was three months old."

The applicable provisions of the statute are found in Section 307, as further amended by the Act of April 26, 1929, P. L. 829, 77 PS §§561-2, and read:

"In case of death, compensation shall be computed on the following basis, and distributed to the following persons: 1. If there be no widow or widower entitled to compensation, compensation shall be paid to the guardian of the child or children. ......

"The terms 'child' and 'children' shall include step-

children and adopted children and children to whom he stood in loco parentis, if members of decedent's household at the time of his death, and shall include posthumous children. ......

"Compensation shall be payable to or on account of any child ...... only if and while such child ...... is under the age of sixteen.

"5. If there be neither widow, widower, nor children entitled to compensation, then to the father or mother, if dependent to any extent upon the employee at the time of the accident. ......"

In construing this legislation from time to time this court has announced these propositions:

No child of a deceased employee, except one begotten by him in lawful wedlock, is entitled to compensation by reason of his accidental death *unless a member of his household at the time thereof*: *Morris et al. v. Glen Alden Coal Company*, 136 Pa. Superior Ct. 132, 7 A. 2d 126.

One of the fundamental purposes of our statute is to provide for the maintenance, up to the age of sixteen, of a deceased employee's child or children. We have no doubt that our legislature used the word "child" in the sense in which it is generally and commonly used in legislative enactments and legal parlance, viz., as referring to and including only one begotten in lawful wedlock, whether born before or after the death of its father: *Gierak v. Lehigh & Wilkes-Barre Coal Co.*, 101 Pa. Superior Ct. 397, and cases there cited; 71 Corpus Juris, Section 295, p. 543.

Illegitimate children, however, are not absolutely excluded as such. An illegitimate child may be awarded compensation upon proof of two coexisting conditions: (a) that the deceased employee stood to it *in loco parentis;* and (b) that the child was a *member* of *decedent's household* at the time of his death. *Dime Trust & Safe Deposit Co. v. Phila. & R. C. & I. Co.*, 78 Pa. Superior Ct. 124, and *Molz v. Hansell et al.*, 115 Pa. Superior Ct. 338, 342, 175 A. 880, are illustrations.

We have also held that an illegitimate stepchild, to whom a deceased employee stood in loco parentis and of whose household she was a member, was entitled to compensation. See *Union Trust Co. v. Union Collieries Co.*, 131 Pa. Superior Ct. 405, 200 A. 267, and Skinner's Pennsylvania Workmen's Compensation Law, Vol. 1, 3d Ed. p. 528.

Obviously, an illegitimate posthumous child is necessarily excluded by reason of the impossibility of showing either of the above specified requirements.

The case of *Balanti v. Stineman Coal & Coke Co.*, 131 Pa. Superior Ct. 344, 200 A. 236, is another illustration of the burden of proof imposed upon those who assert the right of illegitimate children to compensation. There the deceased employee left two illegitimate children, Samuel and Lucy Balanti. The decedent stood in loco parentis to Samuel who was a member of his household at the time of his death. Lucy had not been living with her father for a number of years prior to his death; she had been living in the separate household of her mother. We held Samuel was entitled to compensation and Lucy was not. Standing in loco parentis is a *voluntary* —not a court directed—assumption of the obligations of the parental relation. Here, there is no proof of such assumption. As to membership in decedent's household at any time the record is not merely lacking in proof but contains positive evidence to the contrary.

Nothing would be gained by a detailed analysis of the opinion of the court below. It is a forceful presentation of the writer's individual opinion that any natural child who was dependent upon a deceased parent should be entitled to compensation, regardless of the circumstances under which it was begotten or its residence, and that the failure of the legislature to provide expressly that the word "child," as used in the first paragraph of Section 307, meant only and exclusively a legitimate child opened the way for such a construction of the statute. The remark is made that this case

"presents a question of great public importance on a point of law which has never been decided in this state." This statement ignores the existence of such cases as *Wettach v. Horn,* 201 Pa. 201, 50 A. 1001, *Overseers v. Overseers,* 176 Pa. 116, 34 A. 351, and the above cited earlier decisions of this court. The opinion also overlooks the provision in a subsequent paragraph requiring that certain included classes of children must be members of the decedent's household in order to be entitled to compensation. It is further asserted that "the weight of opinion in other jurisdictions" is in favor of the conclusion reached below. We have repeatedly observed that by reason of the varying provisions of compensation statutes citations from other jurisdictions are of but little help in construing our own. Some of the cases cited below do not support the proposition for which they are cited; others are clearly distinguishable. For instance in the case of *Utah Fuel Co. v. Industrial Commission,* 65 Utah 100, 234 Pac. 697, illegitimate children were awarded compensation because under a statute enacted in 1898 such illegitimate children had conferred upon them the standing of legitimates. In a number of cases it was expressly held that the term "children" did not include illegitimate children; the awards were sustained solely upon the ground of dependency.

A decision from a sister state which the writer of the opinion neglected to cite is *Bell v. Terry & Tench Co.,* 163 N. Y. S. 733. The provisions of the New York statute relative to the subject matter of the present discussion are similar in a number of respects to our law and the decision is flatly contrary to the conclusion reached below in the case at bar.

An applicable paragraph from the opinion cited reads: "It is a rule of construction that, prima facie, the word 'child' or 'children,' when used in a statute, will, or deed, means legitimate child or children. In other words, bastards are not within the term 'child' or 'children.' 5 Am. & Eng. Encyc. of Law, 1095; *Van*

*Voorhis v. Brintnall,* 23 Hun. 260, 263; *Gelston v. Shields,* 16 Hun. 143, 151; *Miller v. Miller,* 79 Hun. 197, 30 N. Y. Supp. 116; *Matter of Miller,* 110 N. Y. 216, 18 N. E. 139. And the rule is well settled that words having precise and well-settled meaning in the jurisprudence of a country have the same sense in its statutes unless a different meaning is plainly intended. *Perkins v. Smith,* 116 N. Y. 441, 23 N. E. 21."

We are all of opinion that when established principles of law are properly applied in construing the statute the assignments of error filed in behalf of the employer to the judgment appealed from must be sustained.

Judgment reversed.