## Reif Appeal

*Henry W. Fulton, Jr.*, and *Kenney, Stevens, Clark & Semple*, for appellants.

*Niles Anderson* and *Regis C. Nairn*, for appellees.

*Thomas M. Rutter, Jr.*, amicus curiae.

LENCHER, P. J., October 30, 1967.—Since this court has exclusive jurisdiction to hear the appeal from the assessments here at bar, where the amount of taxes, real or personal, which may be levied on the assessment in controversy, does not exceed the sum of $5,000 (17 PS §626 (i) and (1)), in open court counsel appeared and argued the legal propositions here involved under the following stipulation of facts. It is agreed and stipulated by and between counsel for appellants and counsel for the City of Pittsburgh and for the School District of the City of Pittsburgh in the above appeals that the following facts shall be taken as true in the within appeals, in lieu of submission of testimony, and that the matters in dispute therein

528

shall be submitted to the court for decision upon the facts so stipulated. FIRST: On August 23, 1935, Otto M. Reif, then a resident of the City of Pittsburgh, created the two intervivos trusts here involved for the benefit of his two sons, Herbert R. Reif (no. A 237 of 1963) and Harold O. Reif (no. A 238 of 1963), naming J. E. MacCloskey, Jr., as cotrustee along with the settlor, Otto M. Reif. J. E. MacCloskey, Jr., died on December 6, 1954, and was replaced as cotrustee by C. H. Bonner. Otto M. Reif died on May 5, 1961, while still a resident of the City of Pittsburgh, and Herbert R. Reif and Harold O. Reif were appointed successor cotrustees of their respective trusts. The cotrustees possess equal powers. SECOND: C. H. Bonner is an attorney-at-law, and on January 1, 1962, and throughout the calendar year 1962, and for 20 years prior thereto, was a resident of the Township of Mt. Lebanon, Allegheny County, Pennsylvania, with his law offices located in the Farmers Bank Building, Fifth Avenue, in the City of Pittsburgh, Allegheny County, Pennsylvania. THIRD: Herbert R. Reif, cotrustee (no. A 237 of 1963), has since August 23, 1935, been the sole income beneficiary of the trust of which he is cotrustee, and was on January 1, 1962, and throughout the calendar year 1962, and for many years prior thereto, a resident of the State of New York, and Harold O. Reif, cotrustee (no. A 238 of 1963), has since August 23, 1935, been the sole income beneficiary of the trust of which he is cotrustee, and was on January 1, 1962, and throughout the calendar year 1962, and for many years prior thereto, a resident of the State of Arizona. FOURTH: The records of both trusts were during the year 1962 maintained at the law office of C. H. Bonner in the Farmers Bank Building in the City of Pittsburgh, Allegheny County, and the securities forming the corpus of both trusts were held for safe-keeping in a safe deposit box in the City

of Pittsburgh. No meetings of the trustees of either trust were held in the City of Pittsburgh or at any other place, all business of the trust being transacted by telephone or by correspondence from or to the law office of C. H. Bonner, Farmers Bank Building, City of Pittsburgh. FIFTH: The cotrustees of both trusts duly filed timely Personal Property Tax Returns for the year 1962 with the Board of Property Assessment, Appeals and Review of Allegheny County, Pennsylvania, and therein reported as taxable, certain securities aggregating in value as of January 1, 1962, section 144, 130 (A 237 of 1963), and section 227, 873.75 (A 238 of 1963). The address from which both Personal Property Tax Returns were filed was 461 Orchard Drive, Mt. Lebanon, Allegheny County, Pennsylvania, which address is the residence of C. H. Bonner. SIXTH: On August 2, 1962, such personal property so reported was assessed and taxed for purposes of the Personal Property Tax for the City of Pittsburgh and the School District of the City of Pittsburgh for the year 1962 in the following amounts:

|  | *A 237 of 1963* | *A 238 of 1966* |
|---|---|---|
| City of Pittsburgh, ..... | $ 288.26 | $ 455.75 |
| School District of the City of Pittsburgh, ....... | $ 576.52 | $ 911.50 |

SEVENTH: Herein discussed are the relevant excerpts of the ordinance of the City of Pittsburgh levying the personal property tax here in question for the year 1962 (marked exhibit "A") and of the resolution of the School District of the City of Pittsburgh levying the personal property tax here in question for the year 1962 (marked exhibit "B").

The ordinances and/or regulations relied upon for the tax use the word "resident". The tax is imposed on taxable property owned, held or possessed by a resident in his own right or as trustee, agent, etc. We believe that it would be proper then at once to observe

that as a result of Dorrance's Estate, 333 Pa. 162, 3 A. 2d 682, 127 A. L. R. 366 (1939), which held that Pennsylvania had no right to levy a personal property tax against a trust, the situs of which was in New Jersey, notwithstanding that three of the four trustees resided in this Commonwealth, the Legislature amended the Act of June 17, 1913, P. L. 507, by the Act of May 20, 1949, P. L. 1534, sec. 1, 72 PS §4841 (1950), by adding a proviso to the effect that when any personal property is held in trust by two or more persons, all of whom are residents of the Commonwealth, but not all of whom are domiciled in the same county, the return of such personal property shall be made in the county where the trustees are domiciled and there shall be paid in each such county that portion of the tax imposed upon the personal property as the number of the trustees domiciled in such county bears to the total number of trustees without reference to the residence of any beneficiary or the trust situs. The situs of the Biddle trust (Biddle Appeal, 390 Pa. 460, 135 A. 2d 915), was Philadelphia. All six trustees were residents of the Commonwealth, but none of them lived in Philadelphia, and in accordance with the statute, personal property taxes were apportioned among the counties of their residence. Sometime in 1956, one of the trustees moved from Chester County, Pennsylvania, to Maryland where he has since resided. In 1957, Philadelphia made a personal property assessment against the trust, claiming that it was entitled to receive the whole amount of the personal property tax on the ground that not all of the trustees were residents of the Commonwealth. The court agreed. The law prior to the amendment would have permitted Philadelphia County alone to levy and collect the tax as the county of the situs. As a proviso, the direction for apportionment was a qualification of the statute leaving the law otherwise unaltered, and

in order for it to operate, all of the trustees were required to be residents of the Commonwealth. The court refused to explore into the legislature's purpose in so limiting the proviso, holding that the language of the statute was so clear and unambiguous as to require no interpretation. It refused, moreover, to depart from its prior decision (Fidelity-Philadelphia Trust Company's Appeal, 337 Pa. 34, 10 A. 2d 547, 129 A. L. R. 265 (1939) ), which sustained the constitutionality of the statute.

The Supreme Court of Pennsylvania has stated that even where property is clearly held in trust, it should be settled that the situs of such property for the purpose of taxation is in that place where the trustee in whom is vested the legal title and ownership is domiciled: West Chester School District v. Darlington, 38 Pa. 157; Guthrie v. Pittsburgh, Cincinnati & St. Louis Railway, 158 Pa. 433. In connection with bonds we should fully consider that often the language of the taxing statute or ordinance makes clear that the situs of such property for the purpose of taxation is in that State where the trustee in whom is vested the legal title and ownership is domiciled: Borough of Carlisle v. Marshall, 36 Pa. 397; Price v. Hunter, 21 W. N. C. 306, U. S. C. C. East. Dist. of Pa. These are cases under the Act of April 22, 1846, P. L. 486, but, so far as the present is concerned, the acts are practically identical. See also: People v. Assessors of Albany, 40 N. Y. 154; Dorr v. Boston, 6 Gray 131. Property held in trust should be assessed to the trustee where he resides. The trustees are the representatives of the fund and it should be assessed at their residences: Desty, Taxation 337. "Words having a precise meaning must be given that meaning when they appear in enactments and/or ordinances unless there is a clear expression of intent to the contrary; by using the specific and express words it did use, the lawmakers

clearly limited the imposition": Snarskar v. Jones & Laughlin Steel Corp., 137 Pa. Superior Ct. 183, 8 A. 2d 461; Commonwealth, Department of Public Assistance v. Hicks, 365 Pa. 153, 74 A. 2d 178. Some ordinances do define "person" and "resident" and our Supreme Court has declared that where a tax decision must turn on the interpretation required to be given, the traditional rules of interpretation apply. These principles appear in Breitinger v. Philadelphia, 363 Pa. 512, 514, 70 A. 2d 640 (1950): "Two fundamental principles should be kept in mind in considering the ordinance and its administration. The first measures the City's power to tax; the second prescribes strict construction"; also, in Hillman Coal & Coke Co. v. Jenner Township, 300 Pa. 108, 112, 150 Atl. 293 (1930), it was stated, "It is a principle universally declared and admitted that municipal corporations can levy no taxes, general or special, upon inhabitants, or their property, unless the power be plainly and unmistakably conferred", giving other appellate court citations and quotations quoted from some of the leading text writers: Murray v. Philadelphia, 364 Pa. 157, 71 A. 2d 280. After all, we are not to overlook the other basic rule that statutes determining the scope of taxables are to be strictly construed; our Statutory Construction Act, of May 28, 1937, P. L. 1019, sec. 58(3), 46 PS §558(3)—we must insist, however, that the words here pertinent are perfectly free and clear from ambiguity.

As Judge Cox said in Dillinger Estate, 83 D. & C. 445, the facts not being on all fours—" 'The taxing officers realize that the facts presented show a case that is not within the words of the statute but endeavor to bring the property within its provisions by construing it as if the legislature had said (what the taxing officials thought might be a projected result). In so construing the statute . . . the taxing authori-

ties and the learned court below reached a result which the statute does not allow. The familiar rule is that unless property is clearly within a taxing statute, it is not taxable: Arbuckle's Estate, 324 Pa. 501, 505, 188 A. 758' ". As the late Judge Baldrige put it in Dixon's Case, 138 Pa. Superior Ct. 385 (syllabus) "The meaning of words used in a tax statute will not be extended by implication; if a doubt arises, the construction should be against the government. The express mention of one thing implies the exclusion of those not included therein. Where the legislature imposes a tax on certain stipulated types of property and thereafter adds a particular class of property to the taxable categories listed in the original act, the clear implication is that it was not the purpose previously to include the latter type of property".

Repeatedly, our Supreme Court has quoted the specific language of the Sterling Act restricting the taxing power of the City of Philadelphia to taxes on persons, transactions, subjects and personal property, inter alia, within the limits of that City, and in those cases has repeatedly limited the tax on the inhabitants or such specific property, declaring that the power to levy that tax must be plainly and unmistakably conferred (Tax Review Board v. D. H. Shapiro Company, 409 Pa. 253, 185 A. 2d 529, rejecting an effort by the tax collector there to treat a partnership as an entity; this being in accord with the cases in our Commonwealth which consistently treat the partnership as an aggregate of individuals not as a separate entity). See Morrison's Estate, 343 Pa. 157, 22 A. 2d 749. Indeed, the Supreme Court underscores in Davis v. Sulcowe, 416 Pa. 138, 205 A. 2d 89, the fact that we are to determine the intent from the language of the statute (here the ordinance), not from any conjectures aliunde, observing that "if the meaning is clear . . . 'the language of the Act requires no rational-

izing' ". The language is plain, conveys a definite meaning; we must accord that language its plain and obvious meaning. It is therefore only in passing that we respectfully observe that even if we resorted to the provision of the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, 46 PS §551, the result at bar would not be different; where the lawmakers make evident the intent to particularize what is being taxed, it will be well that we do not deal with "all-embracing generalities". The taxing language is strictly construed. Pennsylvania Company's Appeal, 337 Pa. 321, 11 A. 2d 160, involving the problem as to whether or not investment trust certificates were subject to a four mill tax imposed at Philadelphia, declared that plainly no purpose to tax all personal property was there indicated. Before us too we have no omnibus phrase, we have a very specific, particular phrase, no catch-all phrases. The descriptions just used are all found in the case last cited. Where the specific language applies only to foreign corporations and persons and not to domestic ones, of course, that classification of tax is upheld, especially where the provisions of the Statutory Construction Act are applied. See Commonwealth v. Mack Bros. Motor Car Company, 359 Pa. 636, 59 A. 2d 963. Such general phrases as "sales of goods, wares, merchandise" or similar language so broad as to require interpretation and construction—follow a clear line of cases infra. So too the lawmakers may furnish their own definitions of words and phrases and this, of course, would bind and conclude us: Sterling v. Philadelphia, 378 Pa. 538, 106 A. 2d 793; but the language here of title and content itself makes abundantly clear the limitation to a "resident", a limitation we dare not ignore.

We may not formulate legislative policy, veto or amend legislative language, fasten upon the taxing lawmakers a new momenclature. We believe we are

properly reading the presently germane taxing language according to its plain and unmistakable terms. A careful reading of the other Pennsylvania appellate court cases cited to 84 C. J. S., Taxation, §115, et seq., carries support, we believe and hope, to the position of appellant.

A careful resume of the city's levy ordinance, CCH, secs. 194-208, the language of the Act of June 25, 1947, P. L. 1145, 53 PS §6851, of sectioss 2 and 3 of the Act of May 23, 1949, P. L. 1676, as amended by the Act of May 10, 1951, P. L. 237, and the language of section 1 of the County Personal Property Tax Act of June 17, 1913, P. L. 507, as amended, 72 PS §4821, levied on property owned by a "resident . . . as active trustee, . . . or by any resident as trustee, . . . jointly with one or more trustees, . . . domiciled in another State, where such personal property is held and managed in this Commonwealth", sustain the position of the taxpayer. At page four of his brief, he indicates that under the County Act, . . . "the fact of residence of Mr. Bonner in Allegheny County and physical location of the assets within the State gives rise to the tax." He also refers to Judge Rahauser's discussion of the tax levied by Pittsburgh and its school district in the Lewis Estate, 26 D. & C. 2d 125, 12 Fiduc. Rep. 1 (1961), discussing the doctrine of "mobilia."

We think it comes to this: Here there are involved in each trust two trustees, one a nonresident of Pennsylvania, and the other a Pennsylvania resident residing outside of Pittsburgh. For such, the School District Act makes no provision. The tax language provides for tax in two specific situations: (1) One trustee *is* a Pittsburgh resident and the other trustees are not, whether in or out of Pennsylvania, and the assets are located in Pittsburgh; (2) where all trustees are residents of Pennsylvania, but one or more in Pittsburgh, and one or more reside outside

of the city, in which case the tax is proportionately divided between the taxing bodies, regardless of location of the personal property. Thus, under the School District Act, there is no imposition of a tax (1) where no trustees reside in Pittsburgh, or (2) where only the personal property is situate in the city. So far as the City of Pittsburgh authority to tax is concerned, not only does it have the inherent limitations of the Act of June 25, 1947, P. L. 1145, which would preclude the city from writing the doctrine of mobilia out of existence so far as nonresident trustees are concerned, but the city ordinance does not purport to attempt to tax property held by a nonresident trustee. The city tax is imposed only where there is at least one trustee residing in Pittsburgh and the property is held and managed in Pittsburgh. So far as the city is concerned, there is a total void of taxation where all trustees are nonresidents of Pittsburgh.

In the answers of the taxing authorities, and indeed in the stipulation, nonresidence is conceded, but the illegality of the assessment is denied in part because the cotrustee, Bonner, has his office in the downtown office building within the City of Pittsburgh and the School District of Pittsburgh so that the taxing authorities repeatedly declare that the corpus of the trust is physically located here within the city and school district; that the corpus of the trust and the office in which the latter is managed are here located; to which the trustees have averred and answered and it is clear from the record that the trustees have held no meetings in the Pittsburgh downtown office at all and that all decisions are made by consultation by telephone or mail and not by or because of their physical presence here in Pittsburgh and the school district. To repeat and underscore under the legislative language lawfully chosen by the lawmakers, the presence

of the corpus of the trust is not per se the determining factor in these appeals.

While we see no ambiguity that needs to be construed—such construction, of course, would have to be in favor of the taxpayer (Commonwealth v. Repellier Coal Company, 348 Pa. 372, 35 A. 2d 319) ; we see no "saving" clause sometimes found in tax provisions; we do not take up the interesting possibilities not here raised by the parties, here we are not concerned with the possibility of "passive income", and are assuming that we are confronted with an active trust and taxable income on personal property, but to be taxed only as the language of the various ordinances and regulations precisely indicate, to wit, on a resident who then fulfills the taxing requirements expressly named; taxation is not imposed on "things not directly named or described".

The use of the word "resident" is not modified or especially broadened by any other language in the two taxing provisions here involved. The person's fixed and permanent home and domicile determines the tax meaning of resident and/or residence; no issue is raised here by the parties as to this matter. The basic distinctions lodged in the express language of the amendments pertinent, in Biddle Appeal, 390 Pa. 460, 135 A. 2d 915, are not here applicable as they involve the problem of the relative rights of one or more counties to tax the same securities where there are multiple trustees and the trustees reside in several counties of the State. Biddle stands for the proposition that in inter-county matters, the county of the business situs of the trusts is the county entitled to the tax, provided one or more trustees reside in that county. The fact that the Reif Trusts are administered in Allegheny County would be decisive as to Allegheny County's right to tax, but the fact that they, the trusts, are located in Pittsburgh is not relevant so far as the city

and school district are concerned. The school district authority brings the business situs into question only in a limited situation where one trustee is a resident of the City of Pittsburgh, thereby impliedly recognizing that if all trustees are nonresidents, mere business situs in Pittsburgh is not sufficient. The same is true of the City of Pittsburgh taxing ordinance.

By significant contrast, some cases in the appellate court books involve executors of deceased Pittsburgh residents. These cases fell under express statutory authorization. The present case involves in each trust, two trustees, one a nonresident of Pennsylvania, and the other a Pennsylvania resident residing outside of Pittsburgh. As such, the School District Act makes no provision. The act provides for tax in two specific situations:

(1) One trustee is a Pittsburgh resident and the other trustees are not (whether in or out of Pennsylvania) and the assets are located in Pittsburgh.

(2) Where all trustees are residents of Pennsylvania, but one is or more are in Pittsburgh, and one or more reside outside of the City, in which case the tax is proportionately divided between the taxing bodies, regardless of location of the personal property.

Thus, under the School District Act, there is no imposition of a tax (1) where no trustees reside in Pittsburgh, or (2) where only the personal property is situate in the city. So far as the City of Pittsburgh authority to tax is concerned, not only do we have the inherent limitations of Act 481, but we have the further fact that the city ordinance does not purport to attempt to tax property held by a nonresident trustee. The city tax is imposed only where there is at *least one* trustee residing in Pittsburgh *and* the property is held and managed in Pittsburgh. So far as the city is concerned, there is a total void of taxation where all trustees are nonresidents of Pittsburgh, as in the present case.

In short, the plain and unmistakable terms of the statutes must be interpreted according to their usual and ordinary meanings as our Supreme Court has repeatedly declared: Calvert Distillers Corporation v. Board of Finance and Revenue, 376 Pa. 476, 103 A. 2d 668, determining the necessity that a petition for a refund had to be filed under the language of that tax provision within two years of payment and declaring that the time limitation was so clear and free from all ambiguity that the letter could not be disregarded under the pretext of pursuing its spirit.

In passing, we may note that the very next case in that same volume following Calvert, supra, City Stores Company v. Philadelphia, 376 Pa. 482, 103 A. 2d 664, dealing with certain powers of taxation of transactions within the limits of Philadelphia, held that when there is a reason for conducting a transaction in a jurisdiction where it is not taxable, there is no legal bar why that person in such transaction is barred from performing it in the tax-free jurisdiction, even where the only reason for the choice is to escape the tax; where one has a legal right to do a particular thing, the law will not then inquire into his motive for doing it.

As it was also in the older case of Guthrie v. Pittsburgh, Cincinnati & St. Louis Ry., 158 Pa. 433, 27 Atl. 1052, a Pennsylvania resident trustee kept his securities of an estate with a trust company in the City of Washington, D. C. The only beneficiary under the trust being the testator's widow with a fixed annuity, the remainder being given to persons living outside of Pennsylvania, the securities included bonds of a Pennsylvania railroad corporation, and under the language of that State tax the bonds were liable for such tax under the language there pertinent and the railroad company had a right to retain the amount of that tax from interest on the bonds. So too the late

cases clearly direct that the taxable situs is the domicile of the trustee regardless of source or place of use; the situs generally of intangibles relating to personal property is the domicile of the owner for general purposes of taxation. While the doctrine of mobilia sequuntur personam no longer applies to land and other tangibles, and it is their tax situs in the jurisdiction in which they are physically located, the ancient doctrine still remains because of obvious differences, theoretical and practical, between intangibles and tangibles: Commonwealth v. Universal Trades, 392 Pa. 323, 141 A. 2d 204, dealing with various facets of the situations and, particularly, underscoring the significance of domicile and leaving intact as of the day of that decision, March 17, 1958, "intangibles to the . . . status which they occupied up to a few years ago". The Supreme Court asked and said in part, in Commonwealth v. Chester County Light and Power Co., 339 Pa. 97, 14 A. 2d 314, "What does the act say? . . . The language is clear and free from all ambiguity, . . . the letter is not to be disregarded under the pretext of pursuing its spirit . . . the signs put up by the explicit words are the ones by which to be guided".

A careful review of the findings and discussions by President Judge Swope, in Commonwealth v. First Pennsylvania Banking & Trust Co., 24 D. & C. 2d 524, wherein he discussed some of the leading Supreme Court cases, some of the aspects of various provisions of the various transfer inheritance taxes, some of the language indicative of situs for taxing jurisdiction, does not suggest the propriety of the taxes at bar. Of course, it always remains necessary to take into consideration the specific taxing language and the circumstances of each case, page 531. We have looked at the cases therein reviewed and cited, and observe the following: in Safe Deposit and Trust Company of Balti-

more v. Commonwealth of Virginia, 280 U. S. 83, the United States Supreme Court upheld the validity of a tax imposed by the State of Maryland upon stocks and bonds held by a Maryland trustee for a resident of Virginia. The Maryland statute imposed a personal property tax on property "held in trust for the benefit of another". In that case the Supreme Court said: "Manifestly, the securities are subject to taxation in Maryland where they are in the actual possession of the Trust Company—holder of the legal title . . . DeGauay v. Lederer, 250 U. S. 376, 382".

Some of the persuasive statements in those Supreme Court opinions underscore that we are not to engage in conjectures of legislative intent, that courts are not clothed with power to give effect to such conjectures when applying plain and unambiguous statutes. The rule, of course, is the same for the taxing language at bar and when they specify on whom a personal property tax is to be imposed in plain and unambiguous language, this court may not rewrite. The important point is the express direction imposing the tax on a resident.